ALEXANDER C. McCONE, Appellant, v. PATRICK GALLAGHER, Respondent.

*Negligence — injuries to an employee by the fall of a scaffold — distinction, where the scaffold was built by the employees as a part of their work and where it was furnished by the employer as a completed appliance — rights of an employee put to work upon it after it has been built by his co-employees.*

Where employees, who are required as a part of their work to construct scaffolds which are to be used in the course of its performance, are furnished by their employer with proper materials for the construction of such scaffolds, the negligent use of such materials, either by reason of improperly uniting them together or by selecting improper materials, whereby one of such mechanics is injured, does not render the master liable.

The fact that the injured employee did not assist in the building of the scaffold, but was put to work upon it after it had been completed by his fellow-servants, is immaterial.

VAN BRUNT, P. J., and O'BRIEN, J., dissented as to the latter proposition.

*Semble,* that where the employer furnishes to the employee a completed scaffold as an appliance with which to do the work, he is liable for injuries resulting to the employee from the fact that the scaffold proves to be an unsafe and improper appliance for the purpose for which it is to be used.

APPEAL by the plaintiff, Alexander C. McCone, from a judgment of the Court of Common Pleas in and for the city and county of

New York in favor of the defendant, entered in the office of the clerk of said court on the 7th day of November, 1895, upon the dismissal of his complaint directed by the court after a trial before the court and a jury at a Trial Term of said court, and also from an order entered in said clerk's office on the 26th day of November, 1895, denying the plaintiff's motion for a new trial made upon the minutes.

*I. Newton Williams*, for the appellant.

*John M. Scribner*, for the respondent.

INGRAHAM, J. :

When the plaintiff rested the court dismissed the complaint, and the correctness of that ruling is challenged upon this appeal. The plaintiff, a carpenter, in the employ of the defendant, who was engaged in the erection of an armory in the city of New York, was injured by the fall of a scaffold while engaged in working upon the armory. The fall was occasioned by the breaking of a timber used to support the scaffold. The plaintiff fell to the floor and received severe injuries.

The liability of employers for injuries sustained by their employees in consequence of the insufficient erection or improper material used in the construction of scaffolds has been discussed in several cases quite recently before the courts of this State, and in these later cases the rules that were supposed to govern in determining the liability of employers for injuries of this character have been somewhat modified. In view of the later decisions it is quite apparent that it is impossible to hold broadly that an employer will in all cases be liable for the negligent or improper construction, or the use of insufficient or improper material, in the construction of a scaffold in use by his employees. It is quite apparent now that something more is needed to show that an employer is guilty of negligence than merely to prove that a scaffold in use by his employees was either improperly constructed or constructed of improper materials to justify a recovery against him. The duty upon an employer to furnish a safe place for his employees to do the work that they are employed to do, and to furnish them with

safe and suitable appliances to do the work, however, still exists, and an employer is liable for injuries that result from a neglect to perform this duty. In all of these cases the first consideration is to accurately determine just what duty rests upon an employer in relation to the scaffolds used by his employees in performing this work.

An examination of a few of the recent cases will, I think, aid us in the consideration of the rules that we now have to apply in determining what facts must exist to establish a violation or a neglect to perform this duty. The rule is broadly stated that there is a duty which every employer " owes to his employees, and which requires him to furnish machinery adequate and proper for the use to which it is to be applied, and to maintain it in like condition for their protection and safety. * * * For every injury happening by reason of neglect to perform this duty he is liable as for a tort, and this is so whether the act or omission causing it was due to his personal neglect or the neglect of an agent employed by him, and whether there are one or more parties concerned as operators or employers can make no difference. The liability is several as well as joint." (*Kain* v. *Smith*, 80 N. Y. 467.) And again, in *Fuller* v. *Jewett* (80 N. Y. 52), the principle is stated as follows : " We understand the principle of these cases to be that acts which the master, as such, is bound to perform for the safety and protection of his employees cannot be delegated so as to exonerate the former from liability to a servant who is injured by the omission to perform the act or duty, or by its negligent performance, whether the nonfeasance or misfeasance is that of a superior officer, agent or servant of a subordinate or inferior agent or servant to whom the doing of the act, or the performance of the duty, has been committed. In either case, in respect to such act or duty, the servant who undertakes or omits to perform it is the representative of the master, and not a mere co-servant with the one who sustains the injury. The act or omission is the act or omission of the master, irrespective of the grade of the servant whose negligence caused the injury, or of the fact whether it was or was not practicable for the master to act personally, or whether he did or did not do all that he personally could do by selecting competent servants, or otherwise, to secure the safety of his employees." Starting with this rule as thus stated, as I can-

not find that it has ever been questioned, it is necessary to determine in each particular case whether, from the relation of the parties and the work that the party injured was employed to do, this duty of the employer was to furnish to the employee the completed structures used, or whether the employer performed his duty when he furnished ample and proper materials for his employees to construct the scaffold. To determine this question an examination of a few of the later cases will place before us the distinction that has been established. An examination of these later cases discloses that the court constantly dwells upon the difficulty in determining whether an act of negligence, either in the construction or in the use of improper materials in the construction of an appliance of this kind, is a violation of this duty of the master. The difficulty in each particular case arises, not from an uncertainty as to the rule to be applied, but as to whether or not the facts of the particular case place the duty of the selection of the materials or their proper use upon the master. I shall call attention to one or two cases which have been lately decided, and then state what I understand to be the result of this discussion of the subject.

The case of *Benzing* v. *Steinway & Sons* (101 N. Y. 550) was an action brought to recover damages for injuries caused by a scaffold or platform breaking, and the facts in that case, upon which the liability of the employer was predicated, were stated as follows: " He (the plaintiff) was unexpectedly called from his work in another part of the factory, to assist in putting up girders to support a roof in course of erection over the boiler room. This duty was not in the line of his general employment, and his evidence shows that he had no previous knowledge of the status of the work or of the appliances used in its prosecution. A platform, consisting of five pine boards painted red, and being one inch thick, fastened together by two hardwood cleats attached to the boards with screws and forming a flooring about four feet six inches wide (the length is not shown), was placed in such a position as to be supported by the wall on one side and an iron beam three feet therefrom on the other, and extending over a vault about eleven feet deep. * * * The plaintiff asked the foreman if it was safe and was informed that it was. * * * He advanced upon it to the place where his services were needed, when the board broke and precipitated him into the

vault below, and a serious injury resulted." It was held that upon these facts the case should have been submitted to the jury, the court saying : " The rule is unqualified that a master is bound to use all reasonable care, diligence and caution in providing for the safety of those in his employ and furnishing for their use in his work safe, sound and suitable tools, implements, appliances and machinery in the prosecution thereof and keeping the same in repair. This is the master's duty and he cannot exempt himself from liability for its omission by delegating its performance to another, or, having required work to be done, by omitting precautions and inquiries as to the time and manner of its performance. * * * Ignorance by the master of defects in the instrumentalities used by his servants in performing his work is no defense to an action by the employe who has been injured by them, when, by the exercise of proper care and inspection, the master could have discovered and remedied the defects or avoided the danger incident therefrom." In this statement of the law all of the judges of the Court of Appeals concurred.

The next case to which I think attention should be called is the case of *Butler* v. *Townsend* (126 N. Y. 107), in which the court seems to have limited the broad application of the rule applied in the cases before cited, and to have considered the distinction between the furnishing by the master of a completed structure as an instrument or appliance for the work of his employees and the furnishing by the master of proper materials with which such an instrument or appliance is to be constructed, where it is the duty of the employees engaged in the same character of work as the person injured to construct such scaffold. In the case there decided the defendant was engaged in repairing the exterior hull of a vessel in a dry dock. He engaged two classes of workmen, known in the business as "lumpers" and "caulkers." The duty of the former was to erect staging around the vessel, grave the vessel and put on the felting if necessary and run the metal; and when this work was done that of the caulkers followed. The lumpers, under a contract with the defendant, agreed to do the lumpers' work upon the vessel, which included the erection of the staging. After that work had been done the caulkers commenced their work. The lumpers erected the staging, and one of the planks that they used for that purpose being defective, broke with the weight of the men upon it,

one of whom, not belonging to the lump gang, was fatally injured; and for his death the action was brought. The evidence showed that the defendant furnished an abundant supply of sound and suitable timber to erect the staging, and that the particular plank which broke had been examined and condemned and marked as unsafe, and that the sole negligence which occasioned the injury was a careless selection of that plank by the lumpers, for which the defendants were not responsible. In deciding the case the court say: " Assuming then that the lumpers were servants of the defendants, acting under the direction and orders of their foreman, they were also the fellow-servants of the caulkers. Both were working at the same time under a common master, upon the same vessel and engaged in the same general employment. That to some extent their trades were different, and one might not be skilled in the work of the other is immaterial where all were working on the hull of the vessel for one general purpose to accomplish one common result and under one common control. * * * Now, the evidence in this case demonstrates that as between the master and his servants it was the duty of the servants and not of the master to erect the staging. That was the uniform rule and unbroken custom which everybody understood and upon which everybody acted. It was a detail of the servants' work and a duty of the operatives which they and not the master were bound to perform. The duty of the latter was to furnish the horses and the plank, and of the former to construct the staging for their own convenience and use. It was as much a part of their work as to put on the sheets of metal which the master supplied; " and it was held that the selection of this improper plank for the construction of the staging was not a neglect of the master, but was due to the neglect of a fellow-servant.

The case of *Griffiths* v. *The New Jersey & New York Railroad Company* (8 Misc. Rep. 3; affd. by the Court of Appeals without opinion, 149 N. Y. 595) seems to have been a case in which this distinction between the duty of the employer to furnish suitable machinery or appliance, or his duty to furnish proper materials with which his employees were to manufacture the machinery or appliances, was again applied. There one Horn was foreman of workmen upon a building which was being constructed by the

defendant. The plaintiff was a carpenter employed by the defendant and placed under the orders of Horn, who also worked as a carpenter when not engaged as foreman. Horn and the other workmen, from materials furnished by the defendant, placed certain beams in position to be used as a staging upon which the men were to work, and upon those beams boards were stretched which constituted the staging. Four workmen, of whom the plaintiff was one, worked upon the staging. One of the tie beams broke, letting the staging fall, and the plaintiff was seriously injured. The beam was weak by reason of a large knot in it, which caused it to break. This tie beam was handled by Horn as well as another workman when it was put in position. Neither saw the defect in it, but it appeared that by using ordinary care they might have seen it, and the court held that this negligence in using the beam was the negligence of the fellow-servant for which the defendant was not responsible, and a nonsuit was affirmed.

And then, as again emphasizing this distinction, the case of *Kimmer* v. *Weber* (151 N. Y. 418) is important. In that case the plaintiff's intestate was in the employ of the defendants, who were builders. He was killed by the falling of a scaffold used by the defendants' workmen in their business. The question was whether the accident was the result of negligence on the part of the defendants. The plaintiff's intestate, with others, used a scaffold that they found in the building, and which had been erected by certain plumbers who were also at work in the building. This scaffold was used as a part of the scaffolding for the masons, and it was insufficient for that purpose. The court, stating the rule to be applied in determining whether or not the furnishing of this scaffold was a duty of the defendants, said: "The scaffolding having been constructed by the workmen themselves, or under their direction, if the appliances which they made use of for that purpose were in any respect defective or insufficient, they had, so far as appears, the same means of knowing that fact as the defendants. It was not enough to prove that the scaffolding gave way under the circumstances, resulting in an accident, or that it was in fact defective, unless it was made to appear that this was the proximate result of some omission of duty on the part of the defendants or their foreman. If they furnished suitable materials for the construction of a proper platform, and the work-

men themselves constructed it according to their own judgment, the defendants were not liable for the manner in which they used the material so furnished." And one reason stated by the court why the plaintiff failed to make out a case for the consideration of the jury was, that it was not shown that the defendants, or their foreman actually controlled or directed the construction of the platform.

This review of the cases containing the latest expressions of opinion of the Court of Appeals to regulate us in the determination of this question seems to establish this principle : Where an employer employs mechanics to do a certain amount of work, the doing of which requires the use of scaffolds, which it is a part of the work of the mechanics so employed to construct, and the employer furnishes proper materials with which to construct the scaffolds, the negligent use of such materials, either by improperly uniting them together or by selecting materials not proper for the particular use for which they are selected, whereby one of such mechanics is injured, as the accident was not the result of the neglect of a duty that the master owed to his employees, the master is not liable ; and that, to establish a cause of action for such an injury, the plaintiff must prove, in addition to the fact that there was negligence in the selection of the materials for the building of the scaffold, the additional fact that the master, or some one that stood in the relation of representative of the master, assumed to construct the scaffold, and then directed the employees to use it as a constructed scaffold.

In the case of *Bryer* v. *Foerster* (9 App. Div. 542) we held, where it was conceded that a scaffold was improperly constructed, and that the cause of its breaking was the use of a joist in which there was a large knot, and where this scaffold was erected by the foreman of the employer, who had general charge of the work and directed the employees to use it, that for the negligent construction of such scaffold the employer was liable ; and these two cases (*Kimmer* v. *Weber* and *Bryer* v. *Foerster, supra*) present the distinction which we are to apply in determining the liability of an employer for an injury occasioned by the negligent construction of a scaffold. Where an employer employs men to do particular work, furnishing them with a completed scaffold as an appliance with which to do the work, if that completed scaffold is an unsafe or an improper appli-

ance for the purpose for which it was to be used, there is a violation of the duty imposed upon the employer to furnish his employees proper appliances with which to do the work. Where, however, the employee, as a part of the work that he is to do, is to construct the scaffold out of the materials furnished by the employer, and the employer furnishes proper materials for that purpose, and such employee, either by negligence in putting the materials together or selecting the materials, erects an unsafe appliance which results in injury to one of those employed to do the work, the neglect is not that of the employer.

I have cited from these authorities at considerable length, and stated the rule which seems to me to be the one to be deduced from them, as considerable confusion has existed in regard to the principles to be applied in these cases, and we think it best to do what is possible to furnish a clear guide for the trial courts.

Now, applying this distinction, as here stated, to the case at bar, it is quite apparent that this nonsuit was entirely proper. Assuming that the complaint was sufficient to charge the defendant with negligence, which, if proved, would justify a recovery, the evidence showed that the plaintiff was a carpenter, employed to work in the construction of this armory. A few days after his employment he was told to start the sheathing on the balcony. The foreman said: "There is a scaffold around there and I will send a man around to help you." This scaffold was built at the time the plaintiff went to work, was about fifty feet in length, and extended clear across one end of the armory. Other men were at work on different sections of the scaffold, which was built of long pieces of timber or sleepers, one end resting upon upright pieces of timber and the other upon the wall of the building, and on these sleepers there were placed planks, which the carpenters shifted as the work progressed, and upon which they stood when at work. This scaffold was built in the customary way. The witness was a carpenter, and he testified that it is customary for carpenters, who are engaged in doing this kind of work, to build a scaffold of this kind for the workmen to work upon; that he went up on the scaffold without looking at it; that these sleepers which were used were of locust, and that locust wood is stronger than spruce or other kinds of wood used for that purpose, and that he regarded the scaffold as amply strong

before he went on it. It further appeared that this scaffold was built by two carpenters employed by the defendant about a week before the accident; that the foreman, Charles Ruge, gave these two carpenters instructions when they put it up; that the timber used in erecting this scaffold was selected by the two men who built it, from timber furnished by the defendant, and that there was enough timber furnished by the defendant to build this scaffold, besides the pieces that were thrown out; that in this piece of timber, selected for a sleeper, there was a large knot, which could have been seen by any one looking at the timber five or six feet off. It does not appear that the foreman interfered in any way with the carpenters employed as to the selection of the pieces of timber used for the scaffold, or in the way in which it was constructed, but that the scaffold was constructed in the usual manner by competent men, employed by the defendant, who furnished them with proper materials; that it was customary for carpenters employed to do this kind of work to construct the scaffold necessary to do the work that they were employed to do, and that the men that did construct the scaffold and selected the timber used in it were men employed to do the same work that the plaintiff was employed to do, and were his fellow-workmen.

The accident was occasioned by this sleeper, in which there was a knot, breaking when the plaintiff was working upon the scaffold. It is quite clear that this is not a case where an employer undertook to furnish to his employees a completed scaffold as an appliance with which to do the work that they were employed to do, but that part of the work which the employees were employed to do was the construction of a scaffold; and the employer having furnished proper materials with which to construct the scaffold, any negligence in its construction, either in the selection of the materials from those furnished by the employer, or want of skill in putting the scaffold together, would not be the negligence of the master — not the neglect of a duty owed by the employer to his employees.

Great stress is laid in this case upon the fact that the plaintiff was employed to do the carpenter work after the timbers or sleepers upon which the planks were to be put had been placed in position by the carpenters employed by the defendant to do this work; but

it seems to me that that fact is not at all material. The question is not so much as to whether the particular neglect or negligence which selected this improper piece of timber and placed it in this position was the negligence of a fellow-servant as it is whether it was the duty of the master, as master, to furnish these carpenters, employed by him to do carpenter work, which work involved the placing of these timbers in the position in which they were placed, a completed structure or scaffold for the purpose of doing the work. This structure, itself, was not a scaffold supplied by the master for the use of his workmen as an appliance to be used by them in performing their work.

Take the case of painters employed to paint the outside of a building, who are required to work upon a completed scaffold built for that purpose, which is lowered or raised as the work progresses; it is quite obvious that it is the duty of the master to furnish such an appliance; and where the men must rely upon the care of the master or those employed by him in putting together a proper structure necessary for the men to use in the performance of the work upon which they are employed, and where any negligence in the selection of the materials or the proper use of those materials in constructing the completed scaffold would expose the men to serious danger, neglect in the performance of that duty will render the master liable. No such appliance was either furnished by the master or used by the men in this case. They were required to do carpenter work on the inside of this building. To do such work some kind of a temporary arrangement was necessary to elevate them to a position in which they would be enabled to do the work required of them. It was the duty of the carpenters, themselves, to erect such a temporary structure, and their knowledge of its details and requirements was certainly as great as that of the master. He furnished them with no completed structure, nor did he assume to furnish them with such a structure as was necessary to do the work. What he did, and all that he was bound to do, was to furnish the proper materials for the men to use, not only in boarding the building itself, but in the erection of such a temporary structure as should be necessary to enable them to do the work. What the men deemed necessary as the work progressed was to be supplied by the workmen themselves from the materials furnished by the

master, and it was as much the duty of this plaintiff to furnish for himself a proper structure upon which to work as it was his duty to nail the boards upon the balcony when that proper structure had been prepared. The plaintiff was a skilled workman whose knowledge of a structure of this kind was certainly as great as that of the defendant or his foreman. He says he considered this scaffold perfectly safe and went upon it, not using the scaffold itself, but simply using these timbers upon which to place planks to stand on, moving the planks along as the work progressed. Suppose one of these planks which he used in this way had broken and the injury had resulted therefrom, it is clear that the master would not have been liable. Upon what principle then can he be said to be liable because one of the timbers that the plaintiff used to rest the planks upon was insufficient for the purpose? Is it because the timbers had been placed in the position in which they were when the plaintiff used them by some men in the employ of the defendant who, when the accident happened, were the plaintiff's fellow-workmen? It seems to me clear that no liability of the defendant could be predicated upon such a distinction. Upon what principle can it be said that this plaintiff was not as much bound to examine these particular timbers which had been placed in this position by others as he was bound to examine the planks upon which he stood, and which he shifted as the necessities of the work required? Both the planks and the timbers were materials furnished by the master for the use of his men. An examination of the timbers would have disclosed this knot which it is alleged was the cause of the plank's breaking. It was not the master's duty to examine each timber before it was put in place by the carpenters, nor did he assume that task. If the master furnished for his workmen proper timbers for the purpose — and it is conceded that these timbers were proper if they had been of ordinary strength and without knots — and employed competent men to put the timber in place, he had performed his duty to the men who used them. It seems to me that this is expressly within the principle established by the cases before cited.

In *Butler* v. *Townsend* (*supra*) the "lumpers" built the scaffold. One of the caulkers used the scaffold afterwards and was injured. The decision of the Court of Appeals was not placed upon the ground that at the time the lumpers were building the scaffold the

caulkers were in the employ of the defendant. I think that the contrary could be assumed, for it appeared that the caulkers were to follow the lumpers after they had completed their work. The opinion says : That the duty of the former (that is, the lumpers) was to erect staging around the vessel, grave the vessel and put on the felting if necessary and run the metal, and when this work was done that of the caulkers follows. The lumpers, under a contract with the defendant, agreed to do the lumpers' work upon the vessel, which included the erection of the staging. After that work had been done the caulkers commenced their work. The lumpers erected the staging, and one of the planks that they used for that purpose, being defective, broke with the weight of the men upon it, one of whom, not belonging to the lump gang, was fatally injured, and for his death the action was brought. The evidence showed that the defendant furnished an abundant supply of sound and suitable timber to erect the staging, and that the particular plank which broke had been examined and condemned and marked as unsafe, and that the sole negligence which occasioned the injury was a careless selection of that plank by the lumpers for which the defendants were not responsible. The court held : " Now, the evidence in this case demonstrates that, as between the master and his servants, it was the duty of the servants and not of the master to erect the staging. * * * It was a detail of the servants' work, and a duty of the operatives which they and not the master were bound to perform." So in this case. Between the master and the carpenters, it was the duty of the carpenters and not of the master to erect this structure and to place these beams in position, and to place the planks upon them when the work was to be done. It was a mere detail of the carpenters' work, and it was a duty which they and not the master were bound to perform. It was as much a part of their work to put up the staging as it was to put on the ceiling for the purpose for which the staging was erected. So in the case of *Kimmer* v. *Weber* (*supra*). The court say : " The scaffolding having been constructed by the workmen themselves, or under their direction, if the appliances which they made use of for that purpose were in any respect defective or insufficient, they had, so far as appears, the same means of knowing that fact as the defendants. It was not enough to prove that the scaffolding gave way under the

circumstances, resulting in an accident, or that it was in fact defective, unless it was made to appear that this was the proximate result of some omission of duty on the part of the defendants or their foreman. If they furnished suitable materials for the construction of a proper platform, and the workmen themselves constructed it according to their own judgment, the defendants were not liable for the manner in which they used the materials so furnished." It is our duty to follow the decisions of the Court of Appeals when that court formulates a rule by which the courts below are to be guided in determining questions of this character. When that court expressly decide that a certain act is not the duty of a master, but is a mere detail of employment, whereby the workmen themselves are to do the work, the improper performance of which involves no violation of any duty which the master owed to his employee, we are bound to apply this rule thus expressly again and again stated by the Court of Appeals in the decision of this case; and applying that rule it is clear that this accident did not occur in consequence of the negligence of the master in the performance of any duty which he owed to his employees.

I think, therefore, that the dismissal was right and should be affirmed, with costs.

BARRETT and RUMSEY, JJ., concurred; VAN BRUNT, P. J., and O'BRIEN, J., dissented.

O'BRIEN, J. (dissenting):

We agree upon the law, settled by repeated adjudications, that the master is bound to furnish safe appliances for his servants to work with and a safe place to work; and, where he delegates such duty to his foreman or others, he is liable to a servant injured by the neglect of the foreman or those whom he selects. While the law is thus settled, there is always difficulty in its application to the facts of each particular case. Upon appeal, where the complaint has been dismissed, the plaintiff is entitled to the most favorable inferences to be drawn from the evidence. It will not be disputed that it was the duty of the defendant to furnish the plaintiff with a properly constructed scaffold or platform, or with the materials out of which such a platform could be constructed. If, with the latter, he and his fellow-servants, as a detail of their own work, had under-

taken to construct the scaffold and had selected improper, where they might have chosen proper, materials, the defendant would not be liable for injuries resulting from such defective construction. Here, however, the scaffold was erected ten days before the accident and one week before the plaintiff went to work upon it; and the plaintiff was directed by the defendant's foreman to get on this scaffold to do the ceiling work. The scaffold was about ten or eleven feet above the floor at the wall and about seven feet above the floor in front, and, unless properly constructed, was necessarily a dangerous place for the plaintiff and the other carpenters to work. That the knot in the sleeper made it dangerous to use in the construction of the scaffold was fairly to be inferred; and it is undisputed that the plaintiff had no part in the selection of the defective sleeper. When he went to work he found the scaffold already erected; and, having been ordered by the foreman to go to work thereon, he was justified in assuming that the master had discharged the duty which rested upon him of supplying a safe scaffold. I do not think this inference is in any way weakened by the fact appearing that the scaffold was actually constructed by the other carpenters who had preceded the plaintiff upon the work. If the plaintiff had assisted in its construction, or had been present and working at the time it was erected, a different question would be presented. Where, however, as here, the plaintiff, under what must be regarded as the master's instructions, went to work upon the scaffold already erected, he had a right to assume that the master had discharged the duty of supplying a safe scaffold. If the accident, instead of occurring on this armory, had occurred subsequently on another building which the defendant was engaged in constructing, and to and upon which he had furnished for the use of the workmen this defective scaffold, I do not think, as against a workman who had no previous knowledge of how or by whom the scaffold was constructed, that the master could claim as matter of law that he was relieved from responsibility, because as a matter of fact at some previous time the scaffold had been constructed by workmen in his employ. I can see no distinction in principle between the position of the plaintiff who came upon the building after the scaffold was erected, with no knowledge of its prior history or hand in its construction as connected with this

armory, and his position as affected by a defective scaffold furnished in another building.

Upon the facts here appearing, I think the case is controlled by the decision in *Kimmer* v. *Weber* (151 N. Y. 418) and *Bryer* v. *Foerster* (9 App. Div. 542). In the former case, the learned judge writing the opinion at the General Term correctly stated the rule as follows (76 Hun, 483): "Now, the defendants were bound to use all reasonable precaution necessary to make this scaffolding, upon which their employees were invited to stand and work, safe. The defendants personally do not appear to have paid any special attention to the construction of the scaffolding. That matter they committed to their foreman, Joseph Turner. But, as it was a duty which the defendants, as masters, owed to their employees, to exercise due diligence to make the scaffolding safe, Turner, in the performance of that duty, stood in the place of the masters.  \*  \*  \*  The situation is not changed when the master intrusts the performance of a duty which he owes to the servant to some one else. In such case, he who performs the master's duty stands in the master's place, and his act is the act of the master."

Upon the question of the plaintiff's contributory negligence in not having observed the knot in the sleeper, I think, as I do upon the question of the defendant's negligence, that it was for the jury, and the dismissal of the complaint being, in my opinion, erroneous, I dissent.

Van Brunt, P. J., concurred.

Judgment affirmed, with costs.