(57 App. Div. 56.)

### SWAIN v. BROOKLYN ALCATRAZ ASPHALT CO.

(Supreme Court, Appellate Division, Second Department. January 11, 1901.)

MASTER AND SERVANT—SAFE PLACE TO WORK—DEFECTIVE SCAFFOLD — DUTY OF MASTER—FELLOW SERVANT—NEGLIGENCE—LIABILITY.

　　Plaintiff and several other carpenters were employed in tearing down a building under the direction of a foreman. While plaintiff was preparing timbers for the building, the foreman and others constructed a scaffold, and, when completed, the foreman ordered plaintiff to go on it, when it collapsed. The foreman was a competent workman, and the material furnished by defendant was not defective, and the place used for carrying on the work was reasonably safe. *Held*, that in constructing the scaffold the foreman was a fellow servant of plaintiff, and the defendant had not failed in the discharge of any duty to plaintiff.

Appeal from trial term, Kings county.

Action by John W. Swain against the Brooklyn Alcatraz Asphalt Company. From a judgment in favor of defendant, and from an order denying a new trial, plaintiff appeals. Affirmed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCHBERG, JENKS, and SEWELL, JJ.

George W. Wingate, for appellant.
George O. Redington, for respondent.

WOODWARD, J. The plaintiff seeks to recover damages for injuries sustained in an accident happening upon the premises of the defendant, upon the ground that "the said defendant, its agents and servants, carelessly, negligently, and unlawfully made and erected an unsafe, defective, and dangerous wooden structure or scaffolding upon which the plaintiff, as a carpenter hired and employed by the defendant, was directed by said defendant, its agents and servants, to mount, and to do and perform thereon work, labor, and services for the defendant." The complaint further alleges that, after mounting such scaffold, "said structure or scaffolding, by reason of such carelessness, negligence, and unskillfulness of the defendant, its agents and servants, in erecting and making, said structure and scaffolding gave way and fell, and caused the plaintiff to fall;" etc. The learned trial court, at the close of plaintiff's case, granted a motion for a nonsuit, and refused the requests of the plaintiff to go

to the jury upon various questions. Subsequently the court denied a motion for a new trial upon the minutes, and from the judgment and order entered appeal is made to this court.

The plaintiff asks for a reversal of the judgment and order on the ground that the court below has failed to recognize the distinction that exists in law between the cases where a workman who has been injured by the falling of a scaffold participated in its construction, or where, as in the case at bar, he was called by his employer to use the scaffold as a completed structure, he having no knowledge of how it was built, or as to any defect or deficiency in the materials of which it was constructed. If the court, in a case where this distinction existed, failed to make a proper application of the law, there could be no doubt of the right of the plaintiff to have a new trial; but a careful examination of the authorities called to our attention by plaintiff's counsel does not justify the position taken. The evidence shows that the plaintiff, with several other carpenters and laborers, was at work upon the premises, and in the employ of the defendant, in the tearing down and reconstruction of a certain building. One Wiseman appears to have been in charge of this work, and is referred to by the witnesses as the foreman, but he appears to have had no other authority than the direction of the immediate labors, in which he actively participated. In order to carry on the work, it was necessary to construct a scaffold, and this was done by the foreman and two other employés, while the plaintiff and another were engaged in preparing certain timbers which were to enter into the construction of the building. The two latter were located, during the time of the construction of the scaffold, in the center of the yard or inclosure, some 50 feet from the building; and when the platform or scaffold was completed, about 2 o'clock of the afternoon of the day of the accident, the foreman called to the plaintiff and his companion to come and go to work in the placing of the timbers for the building. The plaintiff was directed to go upon the scaffold with a sledge hammer, with which he was to pound or strike upon an upright timber, under the direction of a fellow laborer, who was using a spirit level to tell when the timber was plumb. The plaintiff says:

"I went up there. Just before I went, I see them putting a piece across from one post to another, and didn't think he was putting in nails enough. That was my idea about it. And I said to him [the foreman]: 'Gus, I hope you ain't putting up that scaffold to break somebody's neck?' He said: 'Never you mind; you come up here and go to work. If I ain't afraid to go to work on it, you need not be.' So I went up."

There appears to have been some other conversation between the foreman and the plaintiff after he was upon the platform in reference to the number of nails used, the size of them, etc.; but it does not seem to be necessary to go into the matter any further, as the foreman was clearly not engaged in the discharge of any duty which the master owed to the plaintiff, but was merely a fellow servant, whose negligence cannot be imputed to the defendant. The construction of this scaffold was, under all of the authorities, a mere detail of the general employment. It was necessary to construct

the staging in order to carry on the work of rebuilding, and the fact that the plaintiff was not detailed to this particular branch of the employment does not change the rule of law with respect to his relations to the defendant. There is no suggestion that the foreman or any of the other employés were not competent men. The plaintiff himself testifies that the foreman "is a good mechanic at most everything." It is not questioned that the place furnished for carrying on the general employment was reasonably safe for that purpose, nor do the pleadings suggest that there was any defect in the materials furnished by the defendant, although upon this appeal the plaintiff urges that the nails used were not as large as they should have been. The duty of the defendant not involving the construction of this scaffold, it could not be made responsible to the plaintiff by anything which the foreman of the work may have directed, for in the construction of the scaffolding he was a fellow servant of the plaintiff. The defendant had discharged its duty when it had used reasonable care in the selection of fellow employés, in providing a reasonably safe place for the plaintiff to work, and in providing reasonably safe and suitable implements, considering the nature of the employment itself. Cullen v. Norton, 126 N. Y. 1, 5, 26 N. E. 905. In the case of Kimmer v. Weber, 151 N. Y. 417, 45 N. E. 860, where the plaintiff, with others, had adopted and remodeled some scaffolding used previously by the plumbers at work in the building, the court, after pointing out that the construction of the platforms was one of the details of the general employment, say:

"The scaffolding having been constructed by the workmen themselves, or under their direction, if the appliances which they made use of for that purpose were in any respect defective or insufficient, they had, so far as appears, the same means of knowing that fact as the defendants. It was not enough to prove that the scaffolding gave way under the circumstances, resulting in an accident, or that it was in fact defective, unless it was made to appear that this was the proximate result of some omission of duty on the part of the defendants or their foreman. If they furnished suitable materials for the construction of a proper platform, and the workmen themselves constructed it according to their own judgment, the defendants were not liable for the manner in which they used the material so furnished."

See authorities there cited.

The case of McCone v. Gallagher, 16 App. Div. 272, 44 N. Y. Supp. 697, so fully discusses the authorities, and so concisely states the law of this case (at page 279, 16 App. Div., and page 702, 44 N. Y. Supp.), that it does not appear necessary to go over the ground again; and, even were the question before us which is urged by the plaintiff, that the nails used were insufficient in size, there would be little difficulty in sustaining the judgment in this case. While the defendant undoubtedly owed the duty of furnishing reasonably safe and suitable implements when it attempts to furnish them, it would be carrying this rule a long way to say that an employer was bound to anticipate the particular size of nails which should be used at every stage in the construction of a building, and that it was his duty to have those particular sizes of nails in stock. In the case at bar one of the witnesses who was employed in the construction of the scaffold says that he was directed by the foreman to get the nails which were to be used

in making the scaffold; that he went to a keg in the office or carpenter shop, and brought out two handsful of 10-penny nails, such as were used; that there were also some lath nails and some large spikes —some railroad spikes—in the office. Some of the witnesses thought 20-penny nails were better for building scaffolds and in using the materials which had been supplied, but it does not appear that a sufficient number of 10-penny nails, which would have reached 1½ inches into the timber after passing through the plank, would not have made a perfectly safe scaffolding. It is not necessary, however, to decide this point, as the case was tried upon the theory that the defendant had assumed to provide the scaffold, which was negligently constructed, and that the plaintiff had a right to rely upon the statement of the foreman that the scaffold was a safe and proper one, and the pleadings did not raise the issue.

The judgment and order appealed from should be affirmed, with costs. All concur, except SEWELL, J., taking no part.