NAPOLEON B. RAINES, Respondent, v. TETLEY-KLEIN LUMBER COMPANY, Appellant.

St. Louis Court of Appeals, June 14, 1910.

1. **MASTER AND SERVANT: Injury to Servant: Servant Selecting Material to Construct Appliance: Fellow-Servants.** If a temporary appliance, such as a scaffold, is needed by employees in the course of their work and the employer furnishes suitable material for it, or a mass of the material from which the employees may select what is suitable, the construction of the appliance being entrusted to the employees, and from neglect of one or more of them it is constructed defectively, the master is not responsible for an injury to one of them caused by the defect, since the employees are deemed fellow-servants in constructing the appliance.

2. ——: ——: **Master's Duty to Furnish Safe Place to Work: Defective Scaffold.** Where a master undertook to provide a scaffold as an appliance or place for carpenters in its employ to use while engaged in their task, it was responsible for the negligence of its servant in constructing the scaffold defectively, although, generally speaking, he was a co-servant of the carpenter who was injured by reason of such defect, for if an employer undertakes to furnish complete instrumentalities and appliances to his employees, he is personally bound to exercise due care in selecting or making them, and is answerable for the default of any workman who assists in preparing them.

Appeal from St. Francois Circuit Court.—*Hon. Chas. A. Killian,* Judge.

AFFIRMED.

*Wm. S. Anthony* for appellant.

(1) The court erred in not sustaining defendant's instruction in the nature of a demurrer to the evidence at the close of the entire case. Hawk v. Lumber Co., 166 Mo. 121; Card v. Eddy, 129 Mo. 510, 28 S. W. 979; Stephens v. Lumber Co., 110 Mo. 399; Hester v. Packing Co., 95 Mo. 17; Rains v. Railroad, 71 Mo. 165;

Fogarty v. Transfer Co., 180 Mo. 490, 79 S. W. 664. (2) The court should have sustained defendant's motion for a new trial. Harper v. Railroad, 47 Mo. 567; Lee v. Detroit Works, 62 Mo. 565; Card v. Eddy, 129 Mo. 510; Stephens v. Lumber Co., 110 Mo. 399; Fogarty v. Transfer Co., 180 Mo. 490; Rigsby v. Oil Well Supply Co., 115 Mo. App. 398, and cases cited; Robinson v. Railroad, 112 S. W. 734; Bane v. Irwin, 172 Mo. 306. (3) Instruction No. 1 is not predicated on the pleadings, and instruction No. 3 is not predicated on the testimony and is contradictory of instruction No. 1. The instructions, taken together, do not properly declare the law as applied to the fact in this case. Fogarty v. Transfer Co., 180 Mo. 490.

*Marbury & Hensley* for respondent.

(1) The scaffold, as originally constructed by respondent and his co-worker, was properly and securely built. Afterwards, it was torn down by the direction of and under the supervision of the acting general manager. and chief officer of appellant, assisted by a young apprentice, and was by them insecurely and defectively reconstructed. It was the duty of appellant, as an employer, under the circumstances, to provide a reasonably secure and safe place and appliances for respondent to work; and, in this instance the scaffold was such a place or appliance, which the appellant was required to provide. Whalen v. Church, 62 Mo. 326; Forbes v. Dunnavant, 198 Mo. 193; Railroad v. Marony, 67 Ill. App. 618; 4 Thomp. Neg., sec. 3960, p. 198; Huth v. Dohle, 76 Mo. App. 675. (2) When the negligent act complained of arises out of and is the direct result of the exercise of the authority conferred upon him by the master over his colaborers the master will be liable. Fogerty v. Transfer Co., 180 Mo. 511; Stephens v. Lumber Co., 110 Mo. App. 405; Smith v. Transfer Co., 122 Mo. App. 617; Wiley

v. Gas Co., 111 S. W. 1186; Huth v. Dohle, 76 Mo. App. 675. It is the character of the act itself that determines the relation of the actor to the injured servant. If it is one performed in the exercise of delegated authority it becomes the act of the master; and, on the other hand, if it arises from mere co-labor it remains the act of a servant. Dayharsh v. Railroad, 103 Mo. 570; Rowland v. Railroad, 20 Mo. App. 463; Dutzi v. Geisel, 23 Mo. App. 676.

GOODE, J.—A scaffold broke down while plaintiff was on it engaged in work for defendant company, letting him fall to a sidewalk below and breaking a bone in his foot, for which injury he was awarded a verdict by the jury. In the conduct of its business in the city of Farmington, defendant uses an office and some sheds on a north and south street. At the time of the accident its office building was being reconstructed and enlarged by mechanics defendant employed by the day, and who were not under the superintendency of any one individual. Defendant's president, Tetley, or in his absence, the secretary, Klein, directed the workmen about the job in the way to be stated. The workmen were skilled carpenters and the orders given to them by the officers of defendant were not how to do the work, but general directions about what work defendant wanted done, the materials being furnished by defendant, and whenever material was needed that was not on hand, it would be delivered to the mechanics by commands of one of said officers of the company. Four carpenters were employed on the job the day of the accident, and as Tetley was absent from the office, orders of the character aforesaid about the work were given by Klein, the secretary, from time to time. The particular task the men were performing that day was nailing sheet tin on the outside of the office building, and to enable them to put on the tin toward the top of the walls, a scaffold had been erected around the building, or three sides of it. The

carpenters built the scaffold out of material furnished by defendant and no question is made about the material being suitable. On the front of the building, which we believe faced east, though the record is vague as to that, one of the "putlock" (putlog) boards as the witnesses called it, on which the floor of the scaffold rested, was nailed at one end to the frame of the door of the office, and at the other end to a telephone pole standing a few feet from the door. This board was nearly an inch thick and seven or eight inches wide, and was stanchly fastened to the door and the telephone pole by driving four or five ten-penny nails through each end. The door of the office stood back a few inches from the sidewalk and defendant had arranged with a firm to lay in concrete in the space between, thereby making a smooth surface from the walk to the door. To do this it was necessary to remove the door frame, and to take the frame out it was necessary to detach from it and the telephone pole, the board or putlog on which the floor of the scaffold rested, and take down part of the scaffold in front of the door. While plaintiff and another carpenter, Ebricht, were engaged at work elsewhere on the scaffold, defendant's secretary Klein ordered Arnold Day, one of the carpenters, to remove the door frame and in doing this he removed the end of the scaffold. detached the putlog and then removed the door frame. Klein helped a little about this work. to what extent is not clear: but he saw it all done. After the door frame had been removed. Day set about restoring the part of the scaffold he had taken down, and to this end first renailed the putlog board to the telephone pole, then nailed a cleat somewhere in the doorway. to fasten the putlog to, the door frame to which it had been fastened having been taken away. While Day nailed the end of the putlog board to the telephone pole, Klein held the other end to facilitate nailing it: but after the outer end had been fastened to the post, he remarked that Day could nail the other end without help and went

away. Day drove one ten-penny nail through the end of the putlog board, and within an inch of its upper edge, into the cleat nailed to the doorway of the office. Having no more such nails, he went for some, intending to return and drive others through the end of the board; but instead of returning his attention was diverted and he took up work in the interior of the office. Before leaving the scaffold he had relaid its floor boards over the putlog board attached to the post and the office door in the manner stated; and later plaintiff and Ebricht in the progress of their task of nailing on sheeting, worked around to that part of the scaffold, and when they stepped on the floor near the putlog board, the end of it attached to the office door split where it was nailed, in consequence of the nail being driven too near the top edge, and as there was no other nail through it at that end, it gave way and the two men fell to the sidewalk. One assignment of negligence in the petition was the employment of Day, who was alleged to be an inexperienced and incompetent workman; but this ground of recovery was abandoned at the trial. The other assignment was negligently furnishing an insecure scaffold for plaintiff to work on; which assignment was particularized by alleging that after a good and safe scaffold had been constructed by plaintiff and his co-workmen along the end of the building, about eight feet above the sidewalk, defendant's secretary and director, who was in charge of the management of the work of enlarging and repairing the building, together with Day, negligently removed the center or west portion of the scaffold on which plaintiff was working in the line of his duty, negligently reconstructed said west portion of it in a defective, unsafe and insufficient manner, so it would not support the weight of the workmen; that while plaintiff was working on the building and standing on the scaffold so negligently reconstructed and furnished by defendant, it broke and gave way, precipitating him to the sidewalk. The instructions submitted the case to the

jury on the theory that plaintiff was entitled to a verdict unless the jury found the scaffold was unsafe and was negligently constructed, and Klein superintended the reconstruction, and advised them if they found he had no authority to direct the workmen in their work, and did not superintend the reconstruction of the scaffold, but Day reconstructed it as he saw fit, the issues should be found for defendant. The proposition relied on in the brief for defendant is, there was no proof Klein was a vice-principal but the entire evidence proved he was acting in the reconstruction of the scaffold in the capacity of a co-servant of plaintiff. As regards Klein's authority, in the absence of Tetley, to order what work should be done, including authority to order part of the scaffold taken down and the door frame removed so concrete might be laid between the sidewalk and the door, there can be no doubt. He was the secretary and a director of the company, was in charge of the lumber yard and also of the work on the buildings, and had power to give what orders in connection with the work he deemed proper. It is not contended he was without power to have a portion of the scaffold taken down so the door frame might be removed, but it is contended that in so far as he participated in the work in repairing the scaffold, he acted as plaintiff's fellow-servant, and defendant is not responsible for his negligence. Klein was not negligent and we attribute the casualty to the careless way in which Arnold Day fastened the end of the putlog to the door of the office. The gravamen of the petition was the omission of ordinary care by the company to provide plaintiff a reasonably safe scaffold to work on. Counsel for defendant does not say the scaffold was reasonably safe, but contends it was made and left unsafe by a fellow-servant; and the position of defendant remains substantially unchanged if we say Day, not Klein, was to blame. In either contingency the argument is a co-servant of the plaintiff was in fault. The personal, non-delegable and continuous duty incumbent

on an employer to use ordinary care to furnish employees a reasonably safe place to work and reasonably safe appliances to use, has been encroached on to this extent: If a temporary appliance is needed by employees in the course of their work, say a scaffold, and the employer furnishes suitable material for it, or a mass of material from which the employees may select what is suitable, the construction of the appliance being entrusted to the employees, and from neglect of one or more of them it is constructed defectively, the master is not responsible for an injury to one of them caused by the defect; but the employees are deemed fellow-servants in constructing the appliance. [2 Labatt, Master and Servant, sec. 615, p. 1785; Bowen v. Railroad, 95 Mo. 268, 277; McCone v. Gallagher, 44 N. Y. Supp. 697; Kimmer v. Webber, 151 N. Y. 417.] By virtue of that exception to the general rule, if the scaffold in question had given way to the injury of plaintiff in consequence of some fault of construction, as it was first built, plaintiff could not have recovered, even though the fault was not due to his own neglect or lack of skill, but to that of the other carpenters. But as first built, the scaffold was secure. Part of it was taken down and rebuilt by order of defendant; and without the fault of plaintiff and unknown to him, it was insecurely rebuilt by the neglect of another employee. It is true this workman was a co-employee of plaintiff in the general work of enlarging the building; that is to say, he was a carpenter employed like plaintiff and for the same work. But this important distinction comes in right here: The reconstructed part of the scaffold was not built by plaintiff and the gang of carpenters for their own use, but was built, as it were, by a detached workman under the order of defendant's official, and furnished to the carpenters for their use. Defendant's liability as regards the safety of the reconstructed part of the scaffold, is the same as it would have been in respect of the entire scaffold, if defendant had built that in the first instance by an in-

dependent gang of workmen for the carpenters to use while sheathing the building. In other words, defendant undertook to provide this particular piece of scaffolding as an appliance or place for the carpenters to use while engaged in their task; therefore is responsible for the negligence of Day in building it, no matter if, generally speaking, he was a co-servant of plaintiff. It was furnished as a completed appliance for the use of plaintiff, and if negligence occurred in erecting it, defendant was responsible for any injury thereby caused. If an employer undertakes to furnish complete instrumentalities and appliances to his employees, he is personally bound to exercise due care in selecting or making them, and is answerable for the default of any workman who assists in preparing them. [Bowen v. Railroad, 95 Mo. 1. c. 277; Jones v. Packet Co., 43 Mo. App. 1. c. 406; Brady v. Norcross, 172 Mass. 331; Arkeson v. Dennison, 117 Mass. 407, 412; Cole v. Warren Mfg. Co., 44 Atl. (N. J.) 647; McBeath v. Rawle Admx., 93 Ill. App. 212; C. & A. R. R. v. Scanlan, 170 Ill. 107; Haworth v. Mfg. Co., 87 Ia. 756; 2 Labatt, sec. 615.]

The judgment in this case was for the right party and will be affirmed. All concur.