(21 Misc. Rep. 452.)

## DIVVER v. HALL.

(Supreme Court, Appellate Term. October 28, 1897.)

1. INJURY TO EMPLOYE—NEGLIGENCE OF MASTER.

Plaintiff, while in defendant's employ, was injured by the slipping of a deck skid on which he stepped in the performance of his work. The skid was suitable and in good order. The accident was due to the fact that it was not securely fastened to the vessel. *Held*, that it was essential to plaintiff's cause of action to establish further the fact that defendant had neglected to furnish rope to secure it.

2. SAME—BURDEN OF PROOF.

Negligence, where it is an essential element in a cause of action, can never, in the absence of proof, be presumed, and the burden of proving it is upon the plaintiff.

**8. Appeal—Review—Sufficiency of Evidence.**

The appellate powers of the appellate term in respect to appeals from the general term of the city court are similar to those of the court of appeals in appeals to that court, and the same rules obtain. While I cannot disturb a judgment as against the weight of evidence, it may, where a motion for a nonsuit has been made and denied, review an exception taken to the denial of the motion, to ascertain whether there is sufficient evidence to sustain the verdict.

Appeal from city court of New York, general term.

Action by Edward Divver against Benjamin J. Hall. From an order of the general term (46 N. Y. Supp. 533) affirming a judgment for plaintiff, defendant appeals. Reversed.

Argued before DALY, P. J., and McADAM and BISCHOFF, JJ.

Nadal, Smyth, Carrere & Trafford (C. C. Nadal, of counsel), for appellant.

Thomas A. Stoddart (J. N. Lewis, of counsel), for respondent.

McADAM, J.    On the afternoon of June 15, 1895, the plaintiff, a stevedore employed by the defendant, while assisting in lading the steamship The Cacique, at pier 37 North river, was injured by the slipping of the deck skid or bridge on which he was passing from the dock to the vessel in the performance of his work.   The defendant's responsibility was placed on the ground that he failed to furnish proper appliances and a safe place to work.   It was conceded that the skid furnished was a suitable appliance, 20 to 25 feet long, and 4 to 6 feet wide, and that it was in good order and safe on the day of the accident.   The feature pointed out and relied on as constituting negligence is that the skid was not at the time securely fastened to the vessel by lanyards, so as to prevent it shifting or falling by the movement of the tide and swells from passing steamers, and, through the omission to make such fastening, the appliance was unsafe, and caused the injury complained of.   The plaintiff sufficiently established by his own testimony and that of the witness Donovan that there were no lanyards attached to the skid when it fell.   But this of itself did not establish a right of action against the defendant.   He was bound to go further, and overcome the legal presumption that the defendant had performed the duty of furnishing rope to fasten the skid, by proving, as matter of fact, that the defendant had neglected this all-important duty, because. if the defendant furnished ample rope to fasten the skid, the menial act of adjusting and fastening the ropes was a mere detail of the work, which, according to the evidence and usage, devolved upon the gangwayman, a fellow servant of the plaintiff.   Donovan testified that there were ring holes on each side of the skid for the lanyards, so that all the master had to furnish for perfect security was rope to go into the ring holes and hold the skid in place.   It would certainly not be contended that a master who furnishes a suitable derrick with plenty of rope would be liable to a workman injured by its fall, simply because he does not adjust the ropes to the derrick before it is sent to the job or put in operation; and yet there is no substantial difference between the case put and the one at bar, as proved.   Affirmative proof establishing the defend-

ant's failure to furnish rope for the fastening of the skid was an indispensable link in the plaintiff's chain of proof.

Negligence, consisting, as it always must, of some wrongful act or omission, where it is an essential element in a cause of action, can never, in the absence of proof, be presumed. The presumption is that all men do their duty (Lawson, Pres. Ev. 61; Wood, Ev. 229; Best, Ev. [5th Lond. Ed.] 402; Bank v. Strauss [Super. N. Y.] 17 N. Y. Supp. 188, affirmed 137 N. Y. 148, 32 N. E. 1066), the maxim being, "Omnia præsumuntur rite esse acta"; and the plaintiff was bound to overcome the presumption before the defendant could be charged as a wrongdoer. In Baulec v. Railroad Co., 59 N. Y., at page 366, the court laid down the rule that a judge is not justified in leaving a case to the jury when the plaintiff's evidence is equally consistent with the absence and the existence of negligence on the part of the defendant, and that, under such circumstances, the party affirming negligence has altogether failed to establish it. See, also, George v. Grant, 97 N. Y. 262. "In an action by an employé against his employer for injuries sustained by the former in the course of his employment, from defective appliances, the presumption is that the appliances were not defective. * * * In like actions for injuries sustained by reason of incompetent fellow servants, the presumption is that the fellow servant was not incompetent, and that the master was not negligent in employing him or retaining him in his employment. Therefore, in such actions, the onus probandi is upon the plaintiff to negative those presumptions, in order to make out a prima facie case. To establish negligence in cases of this character, the plaintiff must prove either that the master had undertaken personally to superintend the work, or that the persons employed by him were not proper and competent persons, or that the materials were inadequate, or the means and resources unsuitable to accomplish the work. The onus is upon him; and, failing to do so, he fails to establish negligence." Thomp. Neg. p. 1053. The vital part of a case should not be left to mere conjecture or suspicion, for where there is no evidence before a jury, or the weight of the evidence is so decidedly preponderating in favor of one side that a verdict contrary to it would be set aside, it is the duty of the trial justice to nonsuit or to direct the verdict, as the case requires. Linkauf v. Lombard, 137 N. Y. 426, 33 N. E. 472.

The defendant and his witnesses testified that ample rope was furnished, though the onus of establishing failure to furnish it was on the plaintiff; and the question resolves itself into whether the plaintiff supplied such proof. Both the plaintiff and his witness Donovan testified that there was always plenty of rope lying around the dock or deck to fasten things, although the plaintiff added that, "because he went down so fast" he did not have time to see anything on the occasion in question. Donovan was particularly interrogated on the subject, as appears by the following questions and answers:

"Q. There was plenty of rope lying around the vessel,—there always are? A. I suppose so; on the docks. They are supposed to be on the dock. Q. There were ropes there that the skid could have been made fast with? A. I guess so. Certainly, they could."

That there was an entire absence of rope with which the skid could have been tied—an indispensable part of the plaintiff's case—was not established by him.   On the other hand, the defendant, as before stat-ted, proved by several witnesses the presence of ample rope; and, independently of this, he was supported by the legal presumption that he had fully performed his duty in that regard.   How can it be urged, therefore, that there was evidence on the part of the plaintiff suffi-cient to require the submission of that question to the jury, or to sus-tain a finding thereon in his favor?

The defendant pointed out the defect in the plaintiff's proofs by motion to dismiss the complaint when the plaintiff rested, and again on the conclusion of the case, stating as the grounds "that ropes were supplied which could be used to secure the skid to the vessel; that the man who was the gangwayman was also supplied, and he was there at the place, at the skid, on the vessel, whose duty it was to make the skid fast; and that, according to plaintiff's own case, the accident happened through the failure of the gangwayman to secure the skid; and that, therefore, the accident was due to the negligence of a fel-low workman."   This motion afforded the plaintiff an opportunity of strengthening his case, if he could, on the question of absence of rope; but he did not, and perhaps could not, do so.   Lewis v. Ryder, 13 Abb. Prac. 1.   The appellate powers of this court in respect to ap-peals from the general term of the city court are similar to those of the court of appeals in appeals to that court, and the same rules must obtain.   Rowe v. Comley, 11 Daly, 317.   While we cannot dis-turb a judgment as against the weight of evidence, we may, where a motion for a nonsuit has been made and denied, review an exception taken to the denial of the motion, to ascertain whether there is suffi-cient evidence to sustain the verdict, because that presents a ques-tion of law for our determination.   Szuchy v. Iron Co., 150 N. Y. 225, 227, 44 N. E. 974; Healy v. Clark, 120 N. Y. 642, 24 N. E. 316; Yale v. Curtiss, 151 N. Y. 607, 45 N. E. 1125.   Assuming, therefore, that there were no lanyards attached to the skid, but plenty of rope with which it might have been securely fastened to the vessel, it is clear from the evidence that it was the business of the gangwayman to see that this duty was performed.   The defendant never undertook and was not obliged to personally superintend this detail of work.   The neglect to perform it must therefore be attributed to a fellow work-man of the plaintiff in charge of that detail, and that was one of the risks which the plaintiff assumed when he accepted employment on the job.   The rule that a master must furnish suitable tools and ap-pliances and a safe place to work is qualified by another,—that where the master furnishes suitable appliances, and the duty to adjust them properly to work of a temporary character is neglected by a work-man whose business it is to attend to that detail, the master is not liable to a fellow workman injured by the neglect.   Conway v. Rail-road Co., 13 Misc. Rep. 53, 34 N. Y. Supp. 113; Cregan v. Marston, 126 N. Y. 568, 27 N. E. 952; McCampbell v. Steamship Co., 144 N. Y. 552, 39 N. E. 637; Hogan v. Smith, 125 N. Y. 774, 26 N. E. 742. These principles are illustrated by the cases.

In Kennedy v. Iron Works, 12 Misc. Rep. 336, 33 N. Y. Supp. 630,

a workman had been injured by the improper setting of a derrick used for hoisting, and the court (at page 341, 12 Misc. Rep., and page 633, 33 N. Y. Supp.) said:

"If the derrick was carelessly or improperly set up under the directions of the foreman, his negligence in that regard was then the negligence of a fellow servant, not performing, in that respect, a duty primarily resting upon the defendant. There was some evidence tending to show that the fall of the derrick was the result of a failure to secure one of the stay ropes at a point sufficiently distant from the base of the derrick to give the latter proper stability. There is no other evidence in the case upon which the accident may be attributed to any other cause. This, however, was due to the carelessness or erroneous judgment of the foreman in setting it up; and as, in that regard, he was acting simply as a fellow servant of the plaintiff, and was not performing a duty which the defendant himself owed to the latter, the plaintiff cannot recover."

The court of appeals has said (Webber v. Piper, 109 N. Y. 499, 17 N. E. 217):

"There are many matters of detail in the management of safe and adequate machinery, which must be intrusted to the operatives, and as to which the master owes no duty except the employment of competent workmen; and we deem this a case of that character. The line of division between the duty of the master to furnish and maintain safe and adequate machinery, and that of the operative to manage and handle it with prudence and care, is difficult to define by any general description, but is quite obvious when each case, as it arises, comes under consideration."

In Hudson v. Steamship Co., 110 N. Y. 625, 17 N. E. 342, the plaintiff, who was helping to load a vessel, was precipitated into the water by the falling of the skid over which he was carrying freight. According to the evidence, it was the duty of one of the longshoremen to make fast the skid to the ship by means of rope, and the accident occurred because the skid was not properly secured. The court, in sustaining a dismissal of the complaint, said:

"The proofs showed the 'skid' to be in good order, and the slipping of the shore end was caused by some omission of those engaged at work to attend to its fastenings, or the fall may have been caused by the swell of some moving vessel. No fault or neglect was shown on defendant's part. The principle upon which actions are allowed against a master by his servant is the obligation resting upon the former to furnish adequate and safe appliances, and such as are usual in the particular business in which the servant is employed. That is a duty implied from their contract, and failure of the master in that duty renders him responsible to his servant for injuries occurring. But, if the master has performed his duty in that respect, the servant takes all the risks involved in the work in which he is engaged, and of his own and his fellow servant's negligence."

The plaintiff in Cregan v. Marston, supra, was injured by the breaking of a rope of a tackle used in loading a vessel. It was proved that there was plenty of rope supplied, and the men could have replaced the old rope with new rope if they had seen fit. The court held that the master had discharged his whole duty, and said:

"The cases cited and their doctrine appear to be founded upon what is determined to be the implied contract relation between the master and servant. Their mutual duties grow out of that relation, and change and vary as it is changed or varied by the facts which indicate and measure it. Where those facts show that, in the understanding of both parties, a class of ordinary repairs are to be made by the servants with materials furnished by the master for that express purpose; that they and he regard it as a detail of their own work; that it is something entirely within their capacity, and not dependent

upon the skill of a special expert; and that the necessity springs from their daily use of the appliance, occurs at different and unknown periods in their service, and is open to their observation in the absence of the master,—the inference is inevitable that the contract relation between the parties makes it a duty of the servants, and a detail of their work, to correct the defect when it arises with the materials furnished."

The plaintiff testified that there were three holds in the vessel for the stowage of freight, No. 1 forward, No. 3 in the center, and No. 2 aft; that he had finished work on the other holds, and went forward to No. 1 to assist in lading resin, the boards he was carrying at the time of the accident being for dunnage for the resin; and, in order to do the work, he had to use No. 1 skid. It may be implied from the testimony that there was more than one skid, or, if only one, that it had to be shifted to suit the occasion. In either event its use at any given place was but temporary, and until the particular detail of work thereat was completed.

In McCampbell v. Steamship Co., supra, the plaintiff was engaged to unload a vessel by trucking freight over a skid. A portion of the skid over a "mouthpiece" at the lower end was not properly secured to the end of the mouthpiece, and the plaintiff was injured in consequence. The court said:

"The most that can be claimed by the plaintiff is that the mouthpiece was improperly tied to the skid. There is no other complaint made with reference to the skid, the mouthpiece, or the appliance furnished for fastening them together. They were of the kind and character in common use. They were open, visible appliances, of simple construction, the use of which was well known and understood by the plaintiff. They were tied together by the employés of the defendant, who were shown to be experienced longshoremen; and if, as claimed, this work was improperly done, it was the negligent act of the co-employés of the plaintiff."

In Jenkinson v. Carlin, 10 Misc. Rep. 22, 30 N. Y. Supp. 530, it appeared that the plaintiff, a bricklayer in the employ of the defendants, was directed by the foreman over the mason work to go to work on a pier which was near a derrick, and was shortly afterwards injured by the fall of the derrick, caused by the absence of a check rope, which a fellow servant who had charge of the derrick forgot to attach to it. The court held that the defendants were not responsible.

In Marvin v. Muller, 25 Hun, 163, an employer furnished to his workmen, who were all competent and fit persons for the work, a derrick in all respects complete and in good condition. The derrick had from time to time, during the progress of the work, to be moved. Owing to one of the workmen having insecurely fastened a guy rope attached to and forming part of the derrick, the derrick fell, and killed the plaintiff's intestate, one of the workmen engaged in doing the work. In an action brought by the legal representatives of the deceased, it was held that the employer was not responsible in damages.

In Holden v. Railroad Co., 129 Mass. 268, the court (at page 278) laid down the rule as follows:

"It being admitted that the derrick was suitable for the work for which it was designed, and there being no evidence of negligence on the part of the corporation in selecting or instructing the workmen, any negligence of theirs in setting up or using the derrick is the negligence of fellow servants of the plaintiff, for which the defendants cannot be held liable."

In an action to recover damages resulting from injuries caused by the alleged negligence of the defendant, it appeared that the plaintiff, an employé of the defendant, was directed to assist in hoisting a large tank into the pump house of the defendant, through a window or archway, before which a scaffold having loose boards upon it had been erected for another purpose. The tank was improperly attached to the hoisting ropes, and, when it was hoisted, it turned over, and struck against the scaffold, knocking down the loose planks, one of which struck and injured the plaintiff. It appeared that if the tank had been properly secured to the ropes, or if the boards upon the scaffold had been removed from or had been fastened to it, no injury would have resulted. The court held that the defendant had furnished the plaintiff a safe place to work, and safe tools, and was not responsible for their negligent use by the foreman who superintended the work; and, further, that the negligence was that of a fellow servant, and therefore one of the risks of the plaintiff's employment. Bagley v. Gas Co., 5 App. Div. 432, 39 N. Y. Supp. 302.

The plaintiff failed to prove any omission of duty on the part of the defendant, and, under the cases cited, the motion for a nonsuit should have been granted. The exception to the refusal to dismiss presents error, for which the judgment must be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.