Daniel McCampbell, Respondent, *v.* The Cunard Steam-ship Company (Limited), Appellant.

In an action to recover damages for injuries alleged to have been caused by defendant's negligence these facts appeared : Plaintiff, an experienced longshoreman, was employed by defendant to assist in unloading one of its steamers. A skid extended from the steamer to the dock ; this was placed in position by other longshoremen and tied to a "mouthpiece," so called, on the dock by lanyards, so as to permit the skid and mouthpiece to move back and forth with the movements of the vessel. Plaintiff went up the skid on to the deck with a truck, at which time the skid and mouthpiece were in apparent position, but on his return with the loaded truck, because of their not being securely tied together, they had separated five or six inches. The wheels of the truck dropped into the opening, throwing out the load, which fell upon plaintiff. No complaint was made except as to the improper fastening of the skid to the mouthpiece. Defendant's counsel requested, but the court refused to charge, that "if defendant furnished suitable appliances for securing the mouthpiece to the skid and the injury occurred because the mouthpiece was not properly secured the plaintiff cannot recover." *Held*, error ; that if this work was improperly done it was the negligent act of plaintiff's co-employees; and that the question was not affected by the fact that plaintiff was not present when the skid and mouthpiece were rigged.

(Argued January 18, 1895; decided February 5, 1895.)

Appeal from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made February 12, 1894, which affirmed a judgment in favor of plaintiff entered upon a verdict, and also affirmed an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Frank D. Sturges* for appellant. The evidence failed to show negligence on the part of the defendant. (*Butler* v. *Townsend*, 126 N. Y. 105; *Hudson* v. *S. S. Co.*, 110 id. 625; *Hogan* v. *Smith*, 125 id. 774; *Hussey* v. *Coger*, 112 id. 614; *Filbert* v. *Company*, 121 id. 207; *Pickett* v. *S. S. Co.*, 12 Daly, 441; *Judson* v. *Village of Olean*, 116 N. Y. 655; *Baulec* v. *R. R. Co.*, 59 id. 356, 366; *Dwight* v. *G. Co.*, 103 id. 359; *Sutton* v. *R. R. Co.*, 66 id. 247.) Experience having proved that the appliances used for discharging the cargo were adequate, defendant cannot be held liable for continuing such use. (*Sweeney* v. *B. Co.*, 101 N. Y. 520; *Burke* v. *Witherbee*, 98 id. 562; *Marsh* v. *Chickering*, 101 id. 396; *Hickey* v. *Taafe*, 105 id. 26; *Stringham* v. *Hilton*, 111 id. 188; *Byrnes* v. *R. R. Co.*, 113 id. 251; *Webber* v. *Piper*, 109 id. 496; *Kenny* v. *C. Co.*, 20 J. & S. 434; *Cullen* v. *Norton*, 126 N. Y. 1; *McCampbell* v. *C. Co.*, 13 N. Y. Supp. 288.) The accident was the result of a risk incident to plaintiff's employment. (*Crown* v. *Orr*, 140 N. Y. 450; *Williams* v. *R. R. Co.*, 116 id. 628.) The defendant is not liable for the acts of Craven, the head stevedore. (*Loughlan* v. *State*, 105 N. Y. 159; *Crispin* v. *Babbitt*, 81 id. 516; *Malone* v. *Hathaway*, 64 id. 5; *Hoffnagle* v. *R. R. Co.*, 55 id. 608; *Slater* v. *Jewett*, 85 id. 16.)

*George William Hart* for respondent. The negligence of the defendant was clearly proved. It is the duty of a master to furnish to his servants "adequate and suitable tools and implements for his use and a safe and proper place in which to prosecute his work." (*Pantzar* v. *T. F. M. Co.*, 99 N. Y. 376; *Benzig* v. *Steinway*, 101 id. 574; *McGovern* v. *C. V. R. R. Co.*, 123 id. 287.) The defendant failed in its duty to furnish a proper and safe appliance with which to perform the work. (*Caughtey* v. *G. W. Co.*, 56 N. Y. 124; *Benzig* v. *Steinway*, 101 id. 547.) The duty which the defendant failed

to perform was one which could not be delegated so as to relieve defendant of any responsibility. (*Fuller* v. *Jewett*, 80 N. Y. 46; *Benzig* v. *Steinway*, 101 id. 547; *Goodrich* v. *N. Y. C. & H. R. R. R. Co.*, 116 id. 402; *Ford* v. *L. S. & M. S. R. R. Co.*, 124 id. 498; *Kranz* v. *L. I. R. R. Co.*, 123 id. 15; *Steuben* v. *McEntee*, 142 id. 204.) The danger arising from the use of the insecure appliances was not among the risks assumed by the plaintiff when he undertook the work without objection. (*McGovern* v. *C. V. R. R. Co.*, 123 N. Y. 288; *Kain* v. *Smith*, 89 id. 384; *Davidson* v. *Cornell*, 132 id. 235.)

Haight, J. This action was brought to recover damages for personal injuries sustained by the plaintiff while in the employ of the defendant company. The plaintiff was an experienced longshoreman. On the 23d day of August, 1883, he entered the employ of the defendant at pier 40, North river, in the city of New York, to assist in the unloading of the company's steamship "Gallia." He with another employee was directed to take a four-wheeled truck and transfer drums of caustic soda from the deck of the vessel to the dock. The ship arrived the evening before and had been moored to the dock. Longshoremen in the employ of the company then rigged the gangways. A skid, variously estimated from twenty to twenty-eight feet in length, and seven feet wide, was placed in position with one end upon the deck of the vessel and the other upon the dock. It was secured to the side of the ship by means of ring bolts and upon the dock it was attached to a mouthpiece, so called, tapering to an edge, by lanyards tied through rings so as to allow the skid and mouthpiece to move backwards and forwards upon the dock, following the movements of the vessel produced by the action of the water. At the time of the accident the tide was high and the deck of the vessel in consequence was six or seven feet above the dock. The plaintiff and his associate took the truck, drew it up the skid on to the vessel, and placed it in position. Two drums of soda were then raised from the hold

of the vessel by means of a winch and placed on the truck. A piece of dunnage wood, tapered at one end, was then placed under the forward drum of soda as a chock to keep them from rolling, and two other pieces of wood were placed through the spokes of the hind wheels to act as brakes in going down to the dock. The plaintiff then started down the skid, drawing the truck after him. When he was about half way down, some one cried out, and he glanced back; saw that the chock was slipping off and the drums rolling forward. He then started to run; but the front wheels of the truck dropped into an opening between the end of the skid and the mouthpiece five or six inches in width, causing a sudden jerk of the handle of the truck, which threw him down, and the drums of soda fell upon his foot, crushing it. Neither party had before noticed that the mouthpiece was not securely tied to the skid. It was in apparent position when the plaintiff and his associate drew the truck up on to the vessel; and had it been in place when the plaintiff was running down the skid, presumably, he would have escaped injury.

At the conclusion of the evidence the defendant moved for a dismissal of the complaint on the grounds: *First.* " That no negligence on the part of the defendant has been shown." *Second.* " That if the plaintiff was injured through the fact that the mouthpiece had become separated from the skid during the operation of the work, either because it was not originally securely fastened, or was not fastened tightly after it had become loosened, then it is the fault of a fellow-servant and not of the company." *Third.* " That the risk was open and obvious, and the plaintiff accepted the risk when he entered into the service." *Fourth.* " That there was no notice of this defect in the skid and mouthpiece which had been brought home to the defendant," etc. The motion was denied and an exception taken.

The court, in its charge to the jury, limited its consideration, upon the question of negligence, to the sufficiency of the skid and mouthpiece and the character of the opening between them. It was then requested by the defendant to

charge that "if the defendant furnished suitable appliances
for securing the mouthpiece to the skid, and the injury occur-
red because the mouthpiece was not properly secured, the
the plaintiff cannot recover." And again: "If the defend-
ant's employees who rigged the skid and mouthpiece were
fellow-servants of the plaintiff, and if the injury was occasioned
by their negligence alone, the plaintiff cannot recover." Both
of these requests were refused and an exception was taken to
each refusal.

We think the exceptions alluded to were well taken. The
most that can be claimed by the plaintiff is that the mouth-
piece was improperly tied to the skid. There is no other
complaint made with reference to the skid, the mouthpiece or
the appliance furnished for fastening them together. They
were of the kind and character in common use. They were
open, visible appliances, of simple construction, the use of
which was well known and understood by the plaintiff. They
were tied together by the employees of the defendant, who
were shown to be experienced longshoremen; and if, as
claimed, this work was improperly done, it was the negligent
act of the co-employees of the plaintiff.

The fact that the plaintiff was not present at the time the
skid and mouthpiece were rigged does not affect the question.
In *Hogan* v. *Smith* (125 N. Y. 774) the plaintiff's intestate, a
longshoreman, was engaged in loading a vessel with flour. In
the square of the hatch and above the hold the workmen had
laid plank and built upon it with bags of flour what is called
a "stool," upon which four men stood and received the flour
lowered to them in slings, and then delivered it to other men,
who stowed it away. It was customary for the longshoremen
to extend the planks upon which the "stool" was constructed
to some distance outside of it, but that precaution had been
omitted, and the deceased was struck by one of the descend-
ing loads and killed by falling into the hold. If the plank
had been laid in the usual manner his life would have been
saved. The plank had been placed in position by other work-
men before the deceased commenced his labor. It was held

that a recovery could not be sustained. FINCH, J., in deliver-ing the opinion of the court, said: "If it be true that the deceased commenced his labor after the "stool" had been built, and without knowledge of the omitted plank and the consequent possibility of danger, that simply tends to free him from the charge of contributory negligence, but does not alter the relation of the master to the servants and their work. The neglect was a continuing one. It became such as to Hogan when he began his work, and at that moment the duty to close the opening by laying additional plank was that of the servants and not of the master. No negligence on the part of the latter was shown." See, also, *Hudson* v. *Ocean Steamship Co. of Savannah* (110 N. Y. 625); *Cregan* v. *Marston* (126 id. 568–571); *Filbert* v. *D. & H. C. Co.* (121 id. 207); *Hussey* v. *Coger* (112 id. 614).

The judgment should be reversed and a new trial ordered, with costs to abide the event.

All concur.

Judgment reversed. _____