Beekman, J.
At the time of the injury complained of, the plaintiff was in the employment of the defendant, who was engaged in constructing the iron w ark of a building then in course of erection. The plaintiff was one of a gang of four men, who were in charge of a foreman, all of whom were also in the employment of the defendant. In order to perform the work upon which they were engaged, the use of a derrick was necessary. Such a derrick was supplied by the defendant. There is no evidence in the case to show that it was not" a safe and proper appliance for the purposes for which it was intended to be used, or that there was any defect in its equipment. It appears from the proofs that it had already been in use during the time that the plaintiff was employed upon the building in question — that is, about a week before the accident — for the performance of the same kind of work as that for which it was being used at the time of the injury. It consisted of two stems of wood, united by a head block at the top ; and a beam of wood at the bottom, with proper bracings of iron. The stems were set in mortises in th'e base block, but were not provided with tenons, so that the stems could be lifted out of the block. In order to employ the derrick, it was necessary that it should be setup at the place where its services were required, and wire stay ropes were fitted to it, to be fastened to the beams of tlm building in such a. way as to give it the necessary rigidity to prevent it from falling when in use. On the morning of the day of the accident, the derrick was moved by the plaintiff, and those with whom he was working, to a portion of .the building, where further work was necessary, and was set up by them at that place, under the directions of the foreman, the. wire stay ropes being attached at such places as he considered necessary. It was then set in motion, for the purpose of hoisting an iron column which was to be placed on the cap of a similar column below. The plaintiff was seated, where his duty required him to be, close to the cap of the lower column, and was engaged in an effort to bring the base of the column, which was then suspended from the derrick, into juxtaposition with the cap of the column below, when the derrick lost its equillibrum and fell over, precipitating the plaintiff to the floor below, in consequence of which he suffered severe injuries.
Upon the trial of the action, there was very little evidence to explain the cause of the accident. None of the stay ropes had given way or become loosened, nor had any portion of the derrick broken. It did appear that one of the stems of the derrick *337 had come out of the mortise in which it had been placed, but there was absolutely no evidence in the case tending to show that a derrick thus put together was not safe or proper to be used, or that this was a defect. Certainly, if derricks so adjusted were in common use, and in that condition were reasonably safe, the defendant was under no obligation to the plaintiff to provide additional means of security. “ A master is not bound to furnish the best known or conceivable appliances; he is required to furnish such as are reasonably safe, Burke v. Witherbee, 98 N. Y. 562; Probst v. Delamater, 100 N. Y. 266, and to see that there is no defect in those which his employes must use. Gottlieb v. Railroad Co., 100 N. Y. 462. The test is not whether the master omitted to do something he could have done, but whether, in selecting tools and machinery for their use, he was reasonably prudent and careful; not whether better machinery might not have been obtained, but whether that provided was in fact adequate and proper for the use to which it was to be applied. These rules are not violated when such machinery becomes insufficient, only when negligently or carelessly used.” Stringham v. Hilton, 111 N. Y. 188; 19 St. Rep. 621.
The burden rests upon the plaintiff of showing that the defendant had not exercised such care. He has, however, failed to make any proof from which such lack of care may be inferred ; and we must therefore assume that the derrick in question was a reasonably safe and suitable appliance; that it was not affected with any defect in any of its parts, or in the assembling of its parts; and that the- accident was the result, not of any defect in the derrick as a machine, but of some error committed in setting it up for use by the gang or the foreman of the gang of men by whom it was being employed in furtherance of their work. The plaintiff offered proof on trial for the purpose of showing that the defendant had not shown reasonable care in the selection of the foreman, with the object of supporting a claim that such foreman was not a fit or suitable person to have charge of the erection and proper securing of the derrick ; that the derrick was "not properly set up and secured ; that the defendant had consequently failed in the performance of one of the duties which the master owes to his servant, namely, that of exercising reasonable care in the selection of suitable and competent fellow servants, and was therefore liable to the plaintiff for the negligence of which the foreman in question was guilty. This evidence was ruled out by the trial judge, on the ground that the plaintiff had made no such claim in his complaint, but relied solely upon "the charge that the injury was caused by the negligence of the defendant in “ using defective and unfit tools, machinery, and appliances, and in negligently, improperly, and insufficiently erecting, securing, and fastening same.” The ruling of the learned judge below was correct. The duty resting upon the master of providing competent fellow servants is a separate and distinct one. If the plaintiff had intended to charge the defendant with a lack of duty in that regard, he should have so stated in his This he has not *338 but has gone to trial charging and solely relying upon a lack of duty on the part of the defendant in respect to the sufficiency of the derrick itself.
The case, then, presents but one single point for our consideration : Did the defendant perform its duty tb the plaintiff in supplying the machine with all the appliances necessary and desirable for the purpose of setting it up and properly securing it at the place where it might be required for use, or did its duty go further, and demand that, wherever it might be set up, it was still incumbent upon the defendant to see to it that proper care was exercised in performing such work? The contention of the counsel for the plaintiff is that the derrick was not a machine or tool, in the sense in which those words are understood when dealing with the question of an employer's liability, until it has been actually set up and is-ready for use; and that, consequently, the defendant was bound to provide a derrick properly set up and secured at each place where it might be required, and for its failure so to do at the place in question has. made itself liable to the plaintiff for the resultant .injury. We are unable to go at any such length. The evidence shows that the derrick was not intended to be a permanent structure, but was to be transferred from place to place, "wherever the occasion of the work required its presence. The work was being done in sections, and, as each section was completed, it became the duty of the men to shift it, and set it up elsewhere for use upon another section. Under such conditions of use, the defendant must be considered as having discharged its duty to its workmen when it provided the machine in a proper condition to be set up for use, and furnished with all the appliances in customary and ordinary use for the purpose of giving it stability. It was a tool essential to the work, constantly requiring change of position, as the extingencies of the work in its-progress demanded. It was something complete in itself, but demanding adjustment and readjustment in its relation to the purposes-for which from time to time it was required. It, therefore, naturally became a part of the duty of those engaged upon the work, and a. part of the business for which they were employed, to use it like any other tool; and the shifting of it from place to place, and setting it. up, became a necessary adaptation of it to the work upon which they were engaged, and was thus a use of it which fell within the line of their general duty. The distinction between a tool or machine thus required to be used and one permanently set up by the master for use will be recognized. IE the derrick was carelessly or improperly set up under the directions of the foreman, his negligence in that.regard was then the negligence of a fellow servant, not performing in that respect a duty primarily resting upon the defendant. There was some evidence tending to show that the-fall of the derrick was the result of a failure to secure one of the stay ropes at a point sufficiently distant from the base of the derrick to give the latter proper stability. There is no other evidence in the case upon which the accident may be attributed to any other cause. This, however, was due to the carelessness or erroneous j udgment of the foreman in setting it up; and, as in that. *339 regard he was acting simply as a fellow servant of the plaintiff, and was not performing a duty which, the defendant himself owed to the latter, the plaintiff cannot recover. The principle governing cases of this nature is also illustrated by the following authorities : Hudson v. Steamship Co., 110 N. Y. 625; 16 St. Rep. 416; Webber v. Piper, 109 N. Y. 568; 16 St. Rep. 423; Cregan v. Marston, 126 N. Y. 568. 38 St. Rep. 428; McCampbell v. Steamship Co., 144 N. Y. 552 ; 64 St. Rep. 246. In the last cited case the plaintiff was a longshoreman, in the employ of the defendant, and was assisting in the unloading of the company’s steamship Gallia. For the purpose of discharging the cargo, a skid, variously estimated at from twenty to twenty-eight feet in length and seven feet wide, was placed in position with one end upon the deck of the vessel, and the other upon the dock. It was secured to the side of the ship by means of ring bolts, and upon the dock it was attached to a “ mouthpiece,” so called, tapering to an edge, by lanyards tied through rings, so as to allow the skid and mouthpiece to move backward and forward upon the dock, following the movements of the vessel, caused by the action of the water. The plaintiff was going down the skid with a loaded truck when the front wheels of the truck dropped into an opening between the end of the skid and the mouthpiece, five or six inches in width, causing a sadden jerk of the handle of the truck, which threw him down, and caused the injury complained of. No one had before noticed that the mouthpiece was not securely tied to the skid. It was in apparent position when the plaintiff and his associate drew the truck up on to the vessel; and, had it been in place when the plaintiff was running down the skid, presumably he would have escaped injury. The court, in its charge to the jury, limited their consideration upon the question of negligence to the sufficiency of the skid and mouthpiece and the character of the opening between them. It was then requested by the defendant to charge that:
“ If the defendant furnished suitable appliances securing the mouthpiece to the skid, and the injury occurred because the mouthpiece was not properly secured, the plaintiff cannot recover.”
And again:
‘‘ If the defendant’s employes who rigged the skid and mouthpiece were fellow seruants of the plaintiff, and if the injury was occasioned by their negligence alone, the plaintiff cannot recover.”
Both of these requests were refused, and an exception taken to each refusal. The exceptions were well taken. At page 556, 144 N. Y, the court says :
“ The most that can be claimed by the plaintiff is that the mouthpiece was improperly tied to the skid. There is no other complaint made with reference to the skid, the mouthpiece, or the appliance furnished for fastening them together. They were of the kind and character in common use. They were open, visible appliances, of simple construction, the use of which was well known and understood by the plaintiff. They were tied together *340 by the employes of the defendant, who were shown to be experienced longshoremen ; and if, as claimed, this work was improperly done, it was the negligent act of the coemployes of the plaintiff.”
Here, as in the case at bar, the defendant had furnished a machine or appliance, requiring adaptation to the work in hand, and which, if properly adjusted, was suitable for the purpose for which it was intended. The work of so adjusting it was an incident to its use, and not an element to its construction, and was properly left by the master to those engaged in using it. Cases of this character are all on the border line.
As was well said in Webber v. Piper, 109 N. Y., at page 490; 16 St. Rep. 423 :
“ The line of division between the duty of the master to furnish and maintain safe and adequate machinery and that of the operative to manage and handle it with prudence and care, is difficult to define by any general description, but is quite obvious when each case, as it arises, comes under consideration.”
We are of the opinion that in the case at bar the defendant had discharged the duty it owed to the plaintiff, and that, if there was negligence in respect to the injury he suffered, it was that of a fellow servant, for which the defendant was not responsible.
Judgment affirmed, with costs.