HUGH DOUGHERTY, Respondent, *v.* EDWARD F. MILLIKEN and FOSTER MILLIKEN, Appellants.

*Negligence — employers liable for a defect in a derrick erected as a permanent structure.*

In an action charging employers with negligence it appeared that the plaintiff, an employee, was injured because an eyebolt, fastened in the stringpiece of a dock, to which were attached two wire ropes, used respectively to support each of two permanent derricks standing on the dock, broke, as there was evidence tending to show, both because of the insufficiency of the eyebolt and because of the improper method in which it was fastened into the stringpiece, by reason of which one derrick fell, throwing the plaintiff from his position on the top of it, while a load was being lifted on the other derrick, and injuring him.

*Held,* that, the derrick having been erected as a permanent structure, the employers were liable.

APPEAL by the defendants, Edward F. Milliken and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 18th day of June, 1897, upon the verdict of a jury for $4,000, and also from an order entered in said clerk's office on the 12th day of July, 1897, denying the defendants' motion for a new trial made upon the minutes.

*Perry D. Trafford,* for the appellants.

*Isaac M. Kapper,* for the respondent.

GOODRICH, P. J.:

The defendants were engaged in steel construction, having a plant on the dock at the foot of Clinton street, Brooklyn. The plaintiff was in their employ, under the foreman, Avery. There were two derricks on the dock, about twenty-five feet back from

the stringpiece and sixty feet apart, one about forty feet and the other about thirty-five feet high. Each had a boom about twenty-five feet long. When the derricks were put up, a week before the accident, the guy ropes were hempen; one of those supporting the smaller derrick had been fastened to an eyebolt on the stringpiece, while the one running to the larger derrick was fastened around a spile near the stringpiece. The day before the accident, Avery, the foreman of the defendants, under whom the plaintiff was working, changed the hempen ropes for wire, and apparently, at the same time, changed the position of the guy attached to the larger derrick from the spile to the same eyebolt which carried the guy of the smaller derrick. In some of the details of this change the plaintiff assisted, although not in the actual making of the guy fast to the eyebolt. When the arrangement was completed there were two wire guys running from the eyebolt to the tops of the two derricks in diagonal directions, so that there were opposite strains upon the eyebolt.

On July 23, 1895, the plaintiff was sent up to the top of the larger derrick to make some changes in one of the other guy ropes attached thereto. While he was in that position a load was being hoisted on the boom of the smaller derrick, when the eyebolt in the stringpiece broke and the derrick on which the plaintiff was, fell, and he was thrown to the ground, receiving the injuries which are the subject of this action.

It is evident that the question of the defendants' liability must depend largely upon the character of the derricks, whether or not they were erected and intended for permanent structures and use; for, if they were permanent, it was the duty of the master to use reasonable diligence to see that they were securely and properly fastened, in a manner suitable for the uses to which they were to be applied.

I think it may be assumed from the evidence that the derricks were intended and erected for permanent use, as it appears that boats and lighters brought iron to the dock, and this was unloaded into the shops of the defendants by the aid of the derricks, all the more that the complaint contains the allegation that the plaintiff was ordered " to go upon the top of a certain derrick which the defendants had and used in and about their business, and which then was in and

upon the premises occupied by the defendants for their aforesaid plant or shops." It may be fairly deduced from the charge of the learned court that the trial proceeded and that the case was submitted to the jury upon that general theory. I find nothing in the evidence inconsistent with this view. In this connection it is to be noticed that the change of the guys from hempen ropes to wire ropes also tended to show that they were intended to be located for permanent use in the position assigned to them. The fastening of the guy to the eyebolt was a part of the permanent erection, and, therefore, a part of the permanent appliance which the master was bound to furnish in such way as reasonably to secure the safety of his employees.

There is no question raised as to the fact that the accident was caused by the breaking of the eyebolt in the dock while a load was being hoisted on the smaller derrick. The plaintiff contended that this resulted from the fact that the eyebolt was screwed perpendicularly into the stringpiece; that only one guy should have been attached to it, and that it ought to have been carried into the timber on a line in continuance of the direction of the strain to which it was to be subjected by such single rope; that it should have gone entirely through the stringpiece, and been there fastened by a nut on the farther side, and that the transverse strain of the two guys running in opposite directions caused the iron to be heated, strained and weakened, and that it was not of sufficient size to stand such pressure. The defendants contended that the accident resulted from the negligence of a fellow-servant, and that the cause of the break was not established by the evidence.

In *Kennedy* v. *Jackson Agricultural Iron Works* (12 Misc. Rep. 336), decided at the General Term of the Superior Court of the city of New York, the court drew the distinction between the liability of the master in a case where a derrick was set up for permanent use and the case where a derrick was not intended for a permanent structure, but was to be transferred from place to place, wherever the occasion of the work required its presence, and held that as the derrick was not intended to be a permanent structure, but was to be transferred from place to place, the master was not liable, as the case was one where the master had furnished proper appliances and the accident was due to the carelessness or erroneous judgment of the

foreman in setting it up, as in that respect he was a fellow-servant of the plaintiff.

In *Tomaselli* v. *Griffiths Cycle Corp.* (9 App. Div. 127), where the accident resulted from the breaking of a cast iron bar, which was being used as a beam to hold up tackle with which heavy weights were being hoisted, this court held that : " The obligation was, therefore, imposed upon the defendant to exercise reasonable care and prudence in the selection of this appliance, and to see that it was reasonably suitable and safe for the purpose to which it was applied. This duty was primary, and could not be delegated to a servant, so as to shield the master from liability for damage occasioned through an omission of the servant to properly discharge it."

*Watts* v. *Beard* (18 App. Div. 243) was a case where a workman was injured by the drawing out of an eyebolt from a ceiling, where it had been placed by a fellow-workman of the plaintiff for a *temporary* purpose. The court said : " It was adopted as a temporary expedient for the occasion — employed as a means to accomplish the purpose then in view, and the use made of it was within the details of the work which the workmen were proceeding to perform. In that view, any negligence to which the plaintiff's injury may have been attributable was not that of the defendants, but was that of his co-employees. * * * Although the engineer was foreman in the work, and the plaintiff acted entirely under his direction, he was, nevertheless, a co-employee of the plaintiff. It does not seem important that the plaintiff personally had nothing to do with the act of putting the eyebolt into the ceiling. It was done in the process of the work, and was incidental to its performance."

This naturally brings us to the cause of the derrick's fall. There is no dispute that the eyebolt broke. There was evidence tending to show that it broke because it was not of sufficient size and strength ; that it was improperly placed in a vertical position in the timber instead of being driven through it in the continuous direction of the strain of the guy ; that it should have been fastened by a nut at the back of the timber ; that only one guy should have been attached to it ; that iron, when subject to a transverse strain, is liable to be heated and, so, weakened. It does not appear, however, that any load had been hoisted on the larger derrick after the two guys were fastened to the eyebolt, so that the only strain on the guy to the larger derrick

was the weight of the derrick itself. But the court fully submitted these questions to the jury, saying : " Was the manner of guying, and was the eyebolt itself and the way it was fastened such as furnished to the workmen a reasonably safe and proper appliance, taken in connection with all that appears in the case from the testimony ? If it was proper, if it was not unusual, if it was safe, if it was such an appliance as the master was bound to furnish to the workman, then the master's duty ended, and he is not liable here because of the happening of the accident from such inexplicable cause."

The verdict, therefore, establishes as a fact that the master had failed in his duty to furnish a reasonably safe and proper appliance.

The court refused to charge as follows : " If the jury find that the bolt broke because it was inserted in the stringpiece in an improper manner, this was the negligence of the plaintiff, a fellow-workman, for which the defendants are not responsible." There was no error in this refusal, under our view of the duty of the master to furnish proper appliances ; that was a duty of the master, and could not be delegated to a servant. This rule is too elementary to need citation of authority.

The court also refused to charge : " It being admitted that the derrick was suitable, and there being no negligence on the part of defendants in selecting the workmen, any negligence of theirs in using or setting up the derrick is the negligence of fellow-servants of plaintiff, for which defendants are not liable." The propriety of the request depended upon the permanent or temporary character of the derrick, and whether the condition of the derrick referred to was before or after its permanent erection. The master's responsibility was not ended when he furnished the different parts of the derricks, the mast, the booms, the guys, the eyebolt, and their place of fastening. It was his duty to assemble these parts in the erection of the finished appliance, so that it should be reasonably safe for the purpose to which it was to be applied. *McCampbell* v. *Cunard S. S. Co.* (144 N. Y. 552), cited by the appellant, is not hostile to this view. That was a case where a skid was being temporarily used as a method of carrying cargo from the dock to the gangway of a ship, and the servants of the defendant had improperly tied the mouthpiece to the skid. This was a part of the servants' duty, and the court so held, but that was a temporary structure and

not a thing set up for permanent use, as was the derrick in the present case.

The only other exceptions which require consideration are those taken to the admission of expert evidence, and I think they do not afford any ground for reversal of the judgment. We think, however, that the verdict was excessive, and should be reduced to $2,500.

The judgment and order must be affirmed.

All concurred, except CULLEN and BARTLETT, JJ., who dissented and voted in favor of unconditional reversal.

Judgment and order reversed and new trial granted, costs to abide the event, unless within twenty days plaintiff stipulates to reduce the recovery of damages to the sum of $2,500 and extra allowances proportionately, in which case the judgment as reduced is affirmed, without costs of this appeal to either party.