### YAW v. WHITMORE et al.

(Supreme Court, Appellate Division, Fourth Department. December 29, 1899.)

1. MASTER AND SERVANT — PERMANENT STRUCTURES — CARE REQUIRED OF MASTER—APPLIANCES.

A derrick consisting of a mast 10 inches square and 40 feet long, with a boom of same dimensions, was firmly attached to the ground by planks in which a metal plate had been imbedded, and which were weighted down with heavy stones. The derrick remained in this place nearly five months, and until the completion of the work for which it was used. Held, that it was a permanent structure, within the rule that a master must use reasonable care in providing his servant with suitable appliances and in keeping them in repair.

2. SAME—EVIDENCE—QUESTION FOR JURY.

Steel cables supporting a derrick were old, and the outer surface had become worn, and many of the wires were broken. It was in evidence that the cables appeared rusty, as though they had been used, and were flattened in places, and, on account of the wires being broken, could not be handled with bare hands, and that, after the break, the broken ends were rusty and worn, with little strands sticking out, and some wires were longer than others, and the break looked as though the cable had pulled apart. It also appeared that when one of the wires breaks, and moisture gets in, the rust eats into the wire, and weakens it. Held, in an action for injury caused to a servant by the cable breaking, that the question should have been submitted whether the cables were so defective as to render them inadequate for their purpose, and hence whether the master used reasonable care in providing the servant with suitable appliances; and this, whether the derrick was a movable structure or not.

Smith, J., dissenting.

Action by William Yaw against Valentine F. Whitmore and others. Verdict having been directed for defendants, motion for new trial on exceptions was ordered heard in the appellate division in the first instance. Granted.

The defendants are contractors, and as such were engaged, during the winter of 1896, in taking down and reconstructing a wasteweir on the Erie Canal, at a place called Cartersville, which is about nine miles east of the city of Rochester. This wasteweir was from 50 to 60 feet in width. Its bottom was some 50 feet below the surface of the towpath, and its walls were

constructed of cut stone, weighing from one-half a ton to two and one-half tons each. Before proceeding with their work, the defendants erected two derricks in the prism of the canal, and located them in such manner that their respective booms reached to every part of the wasteweir. The larger of these derricks consisted of a mast some 10 or 12 inches square, and 40 feet in length, with a boom attached thereto which was of about the same thickness as the mast, but some 5 feet longer. From 8 to 10 men were employed for upwards of three days in constructing its foundations and placing the derrick in proper position. When completed, the mast of the derrick was stayed by steel cables or guys, and the lifting was accomplished by means of similar cables wound upon two drums, which were placed at a point some 75 feet from the bottom of the mast, and there connected with a horse power. One of these drums was used to raise and lower the boom, and the other to raise and lower the load, which was carried in a skip at the end of the boom. While the mast was lying upon the ground, four cables or guys were attached thereto, and, after it was raised into proper position, these cables were stretched out and fastened to various objects,—one to the top of a similar derrick, 45 feet distant; another to a "dead man," on the west side of the canal, and some 200 feet distant; another was extended south about the same distance, and anchored to another "dead man"; and the fourth was attached to an elm tree, which stood about 250 or 300 feet east of the derrick. When the last-mentioned cable was stretched out, it was found to be of insufficient length to reach the tree, in consequence of which it was spliced to another and shorter piece. The derrick was completed and ready for operation on Saturday, the 29th day of November, 1896, and upon the following Tuesday, while a load of stone was being lifted in the skip, the cable attached to the tree parted between the splice and the tree, in consequence of which the derrick fell, and the plaintiff, who was a laborer in the defendant's employ, was struck, and seriously injured. Such further facts as are material to the questions to be considered upon this review will be stated in the opinion which follows:

Argued before HARDIN, P. J., and ADAMS, McLENNAN, SPRING, and SMITH, JJ.

George H. Harris, for plaintiff.
Joseph W. Taylor, for defendants.

ADAMS, J. This case has been twice tried. Upon the first trial the plaintiff recovered a verdict of $6,000, which was set aside by reason of the refusal of the trial court to charge, upon the request of counsel, that if the cable in question was reasonably proper for the work, and broke because of the manner in which it was used by the men who erected the derrick, the master was not liable. 37 App. Div. 98, 55 N. Y. Supp. 1091. Upon the second trial the learned trial justice directed a verdict for the defendants at the close of the evidence, and then ordered the exceptions to be heard by this court in the first instance. Manifestly, therefore, the plaintiff upon this motion is entitled to every fact established, and also to every inference and intendment that might fairly have been drawn therefrom by the jury. 37 App. Div. 633, 56 N. Y. Supp. 1119.

The general rule that it is the duty of a master, which cannot be delegated to another, to exercise a reasonable degree of care in providing his servant with suitable machinery and appliances, and in keeping the same in a proper state of repair, is too well established to require the citation of any authorities in its support; but it is equally well settled that this requirement is satisfied when the master supplies adequate machinery, with all the appliances necessary and desirable for its adaptation to some particular purpose, but the same be-

comes temporarily impaired- by reason of constant use, and the impairment is of such character as to be easily and readily remedied by the servant, a part of whose duty it is to attend to such matters. Cregan v. Marston, 126 N. Y. 568, 27 N. E. 952; Kimmer v. Weber, 151 N. Y. 417, 45 N. E. 860. It is sometimes difficult to determine within which of these two rules a particular case falls, but one distinguishing feature which is often helpful in doubtful cases is that of stability. If the implement, appliance, or structure is permanent in its character, the duty of exercising a reasonable degree of care in its selection and maintenance is one from which the master cannot escape; whereas, if it be portable, its erection, location, and operation may be, and generally are, regarded as mere details of the work, which pertain to the employé.

It is the contention of the defendants' counsel, and his view appears to have been adopted by the learned justice before whom the case was tried, that the derrick in question was not a permanent structure, and that consequently the more stringent of .the two rules to which reference has been made has no application to the case. To a limited extent this contention is undoubtedly well founded; for a derrick is certainly a tool or implement, capable of being transported from one point to another, as the exigencies of the particular work to which it is related may require, and when thus operated it becomes a part of the duty of those engaged upon the work to accomplish its removal, and to properly adjust the structure, as often as its location is changed. In short, its entire management, in such circumstances, is but a detail of their work, and for a failure to perform the same properly and carefully the master is in no wise liable, provided the structure itself, and all the means and appliances furnished by him for its removal and operation, are suitable and adequate for the purpose for which they are designed. Kennedy v. Iron Works, 12 Misc. Rep. 336, 33 N. Y. Supp. 630; Webber v. Piper, 109 N. Y. 496, 17 N. E. 216; Cregan v. Marston, supra; Watts v. Beard,. 18 App. Div. 243, 45 N. Y. Supp. 873; Johnson v. Towboat Co., 135 Mass. 219. But while a derrick may be, and ordinarily is, movable, it is not necessarily so, and in this particular instance it happened to be a structure of great weight, and one which was firmly attached to the ground by means of planks, into which a metal plate had been imbedded, and these planks were weighted down with heavy stones. Moreover, it remained in the precise place in which it was originally located until the defendants' contract was completed, in the month of April following,· a period of nearly five months. In view of these circumstances, it is difficult to understand why it was not as permanent a complement to the work the defendants were engaged in prosecuting as is a planing machine to a lumber mill, or a tackle block to a warehouse; and, if so, then it necessarily follows that, if it was improperly constructed, the defendants are liable. Dougherty v. Milliken, 26 App. Div. 386, 49 N. Y. Supp. 905.

Having reached this conclusion, it becomes important to consider the cause of the derrick's fall. It seems that the steel cables which were used to stay the mast were some which had been used by the defendants while constructing a sewer in the city of Rochester, prior

to their engagement in the work in question. They were five-eighths of an inch in diameter, and were composed of six strands, each with nineteen wires to the strand. While in use upon the sewer work, the outer surface of the cables became somewhat worn, and many of the wires were broken; but, upon the completion of the sewer, the cables were greased, and placed in the defendants' warehouse, there to remain until they should be required for some other work, and when they were taken down to Cartersville they were somewhat rusted, and the ends frayed. One of the plaintiff's witnesses, who had been in the defendants' employ, testified that they "appeared rusty, and as though they had been used,—run over pulleys. There were a great many of the fine wires broken in them. The cables were slightly flattened in some places. There was a large number of the small wires broken all the way through the cable, from end to end. We couldn't handle the cables bare-handed without tearing our hands. They had a uniform appearance throughout." This witness further testified that, when it was discovered that the longest cable did not reach to the elm tree, he, at the suggestion of a son of one of the defendants who was superintending the work, spliced on a shorter piece, which "was rusty and worn, and the wires were frayed out, the same as the rest. It was very rusty." Another witness testified that the cable broke between the splice and the tree, and about eight feet from the tree; that he examined the break after the accident, and discovered that the broken ends were rusty and worn, with little strands sticking out; that some wires were longer than others; and that the break looked as though the cable had pulled apart. Other witnesses testified that when one of the small wires of a cable breaks, and rain and moisture get in, the rust eats into the wire and weakens it. The evidence of these witnesses, which was corroborated to some extent by that of many others, was sufficient, we think, to have required the court to submit to the jury the question of whether or not these old cables were so defective as to render them insecure and inadequate for the purpose for which they were used, and consequently whether the defendants, in thus using them, failed to fulfill the obligation which rested upon them to exercise reasonable care and diligence to provide the plaintiff with a safe place in which, and suitable appliances with which, to perform the work required of him. Coughtry v. Woolen Co., 56 N. Y. 124; Probst v. Delamater, 100 N. Y. 266, 3 N. E. 184; Dougherty v. Milliken, supra; Baker v. Railroad Co., 95 Pa. 211. In the case last cited, an employé of the defendant was killed while at work by the breaking of a rope on a derrick in use by, and belonging to, the defendant. It was shown that, although the rope in its external appearance was sound, it had been in use for two or three years, during which time it had been constantly exposed to the weather, and that it was in fact rotten. In these circumstances, it was held that it was for the jury to say whether it was negligence on the part of the defendant to use the rope for the purpose it did. This case, in many of its features, is not unlike the one under review; and, if the derrick in question is to be regarded as in the nature of a permanent structure, we do not see why

the principle upon which it was decided is not applicable to, and decisive of, the plaintiff's motion for a new trial.

But assuming, as did the learned trial court, that the derrick was a movable structure, and that the duty of changing its location from time to time, as the exigencies of the work required, and of properly securing it as often as such changes were made, was delegated to the defendants' employés, as under such circumstances it doubtless might have been, we do not see how the question of the defendants' negligence could properly have been withheld from the jury; for, even in such a case, the duty still rested upon the defendants to provide reasonably safe and suitable appliances for removing and securing the derrick, and whether or not this duty was fulfilled was, manifestly, a disputed question. Had new cables been furnished in sufficient quantity to secure the derrick, and had the same been apparently perfect in their construction, the defendants would probably have done all that could have been required of them, and if, under these conditions, an old and worn cable had been selected and used by whomsoever was charged with the duty of erecting the derrick, his negligence in making the selection would be that of a coservant, and not of a master; or if, under like conditions, one of the new cables had broken, no liability would have attached to the master. Unfortunately, however, for the defendants' contention, the facts of the case are quite different from those we have just assumed; for it is conceded that at least seven old cables were sent down to Cartersville by the defendants, and the evidence of William H. Vicinus, one of their principal witnesses, is that there was but one new one. This, he thought, was some 360 feet in length, and, if his estimate was correct, it might possibly have sufficed for two guys. But Ransom, a witness for the plaintiff, testified that when he was about to use a portion of this cable for staying purposes he was informed by Vicinus and Sampson, who were superintending the work, that it was to be reserved for the hoisting apparatus, and that it was subsequently used for that purpose is a fact concerning which there is practically no dispute. In these circumstances, how can it be held, as matter of law, that the defendants furnished suitable materials or appliances for prosecuting the work they had contracted to perform? Had they furnished a derrick which they knew to be unsuitable and unsafe for the purpose for which it was to be used, they would be liable for the consequences of their negligence, and certainly they were under no less obligation to furnish proper appliances to secure the derrick after it had been made ready for operation.

It is insisted by the learned counsel for the defendants that this court upon the former appeal virtually recognized the principle for which he is now contending, and in this he is quite likely correct; for the principle is one which cannot be questioned. The difficulty arises from the attempt to apply it to the facts of this case as they now appear. We said then, as we say now, that, if the cables furnished by the defendants were reasonably proper for the purpose for which they were designed, "the defendants are not liable because of the manner in which they were used by the men in setting up the

derrick." But whether or not they were suitable was, under the circumstances of this case, as we think, a question of fact, to be passed upon by a jury. Our conclusion, therefore, is that the plaintiff's exceptions should be sustained, and his motion granted.

Plaintiff's exceptions sustained, and motion for a new trial granted, with costs to the plaintiff to abide the event. All concur, except SMITH, J., who dissents.