PATRICK IVERS, Respondent, *v.* MINNESOTA DOCK COMPANY, Appellant.

*Negligence — injury from the breaking of a defective rope employed to dump a bucket used in unloading iron ore from a vessel — when the master is not liable to a servant therefor.*

A master who furnishes his servants with materials of suitable quality and in sufficient quantity to enable them to perform a particular piece of work in safety is not liable for an accident which results from an improper selection or use of such materials by the servants.

In an action brought to recover damages for personal injuries, it appeared that the plaintiff was employed by the defendant to assist in unloading ore from a boat; that a derrick and bucket were employed in unloading the boat and that the bucket was fitted with a clamp to enable its contents to be discharged; that spliced to a chain attached to the clamp was a rope sixty feet long; that it was the duty of the plaintiff to stand upon the deck of the boat, holding this rope and to pull the same when he received a signal from the man in charge of the ore pile; that on the night of the accident the rope broke at the point where it was spliced to the chain, throwing or twisting the plaintiff in such a manner as to cause him to sustain injuries.

The rope in question was not defective except at the point where the break occurred. There was evidence tending to show that its defective condition at this point could have been discovered on inspection, and that, on account of the darkness prevailing when he went to work, the plaintiff, who was an experienced employee, was not in a position to observe the defect. The rope was a new one which had been in use only one day prior to the accident. It had been purchased of a reliable dealer as a first-class rope, and a first-class price had been paid therefor. It was one which had been selected by the defendant's foreman from the defendant's storeroom, where there was an ample supply of good and perfect ropes. The foreman who selected the rope and the employee who spliced the rope to the chain were entirely competent to perform their duties.

*Held,* that the defendant was not guilty of actionable negligence.

SPRING and HISCOCK, JJ., dissented.

APPEAL by the defendant, the Minnesota Dock Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Erie on the 2d day of December, 1902, upon the verdict of a jury for $1,000, and also from an order entered in said clerk's office on the 2d day of December, 1902, denying the defendant's motion for a new trial made upon the minutes.

The action was commenced on the 1st day of August, 1901, to recover damages for injuries sustained by the plaintiff while in defendant's employ, alleged to have been caused through the negligence of the defendant.

*Frank Gibbons* and *Harry A. Talbot*, for the appellant.

*Rowland B. Mahany* and *Charles W. Sickmon*, for the respondent.

McLENNAN, J.:

At about eight o'clock on the evening of the 8th day of August, 1899, the plaintiff, as was his custom, commenced to assist in unloading ore from a boat upon defendant's dock in the city of Buffalo, N. Y. At that time it was dark. He continued working until between two and three o'clock in the morning, when an accident occurred and he sustained the injuries for which he seeks to recover.

The method of unloading boats adopted by the defendant was to lower a bucket attached to the arm of a derrick operated by steam into the hold of the boat; when filled raise it clear from the boat, and then swing it around a distance of about sixty feet to the ore pile, where the bucket was dumped by releasing a clamp at the bottom and thus permitting the ore to drop out. The appliance for dumping the bucket consisted of about three feet of chain which was hooked to the bottom. At the other end of the chain there was a ring into which was fastened, by splicing, a rope about sixty feet in length and three-fourths of an inch in thickness, which extended over the derrick and was held in hand by the plaintiff who stood upon the deck of the boat, and upon receiving a signal from a man at the dump it was his duty to pull the rope which would cause the ore to discharge from the bucket, which he did; the rope broke at the place where it was spliced or fastened into the ring of the chain, and he was thrown or twisted around in such manner as to be injured thereby. The plaintiff had been employed by the defendant in performing the same duty as at the time of the accident, continuously for three months immediately prior thereto, and for about two months in the previous year. During all that time the method of unloading boats and plaintiff's duty in respect thereto had been substantially the same.

The rope which broke had been in use only one day prior to the accident; it was new; was kept in defendant's storeroom with a quantity or number of other ropes which were furnished by the defendant to its employees for doing the work in question. It was purchased of a reliable dealer as a first class rope, and a first class price paid therefor. Defendant's foreman, who was in charge of the gang of men with which plaintiff worked, selected the rope, got it out of the storeroom and furnished it to be used upon the derrick in question, and one of the men other than the plaintiff spliced it into the ring. This method of obtaining ropes, furnishing them to the men for use upon the several derricks, and attaching them, had been in vogue during all the time the plaintiff was in defendant's employ. There is no suggestion that the rope was not of proper size, but it is urged that at the place where it broke it was rotten or defective, and that such defect could have been discovered by the exercise of ordinary care and prudence, and that, therefore, because of the failure of the defendant to discover such defect, it is liable for the injuries which the plaintiff sustained. It appears by the evidence that there was an ample supply of good and perfect ropes in defendant's storeroom from which to have selected one for the derrick in question; in fact, the rope which broke was again spliced into the ring and used until worn out. There is some evidence tending to show that by looking at the rope where it parted its defective condition could have been discovered, and also that on account of the darkness when the plaintiff went to work he was not in a position to observe such defect. It, however, appears that the foreman who selected the rope was entirely competent; that he had handled ropes and been engaged in such work nearly all his life, and he did not observe any defect. He testified, and his evidence is uncontradicted : "Some of them (the ropes) would give out almost every day; it was my business to see that they were kept straight, and if anything happened I would depend upon the men to tell me, and they usually did tell me if anything was wrong; I didn't personally keep watch of each particular rope all the time to see whether it was right or not; that I left to the men and the men understood that. I never instructed them to that effect, but they always worked that way, and they often did come to me that way, and that was the way I depended on to find out whether they were

in good shape or not." It is not claimed that the employee who spliced the rope into the ring of the chain or any other of plaintiff's coemployees were incompetent to perform their respective duties.

Upon the facts disclosed by the evidence in this case, we think the plaintiff failed to establish actionable negligence on the part of the defendant. It is well settled that, if a master furnishes his servants with materials of suitable quality and in sufficient quantity to enable them to safely do a particular piece of work, he is not liable because of an accident which results from an improper selection or use of such materials by such servants. (*Moore* v. *McNeil*, 35 App. Div. 323; *McCone* v. *Gallagher*, 16 id. 272; *Yaw* v. *Whitmore*, 46 id. 422.)

The last case cited was an action brought by an employee against the master, to recover damages for injuries which he sustained by the falling of a derrick, which was caused by the breaking of an iron cable intended to hold the derrick in place. It appeared in that case that all or substantially all the cables furnished for that purpose were more or less defective and unsuitable for the purpose intended, and the judgment entered upon the verdict of the jury in plaintiff's favor was affirmed; but the court said: "Had new cables been furnished in sufficient quantity to secure the derrick, and had the same been apparently perfect in their construction, the defendants would probably have done all that could have been required of them; and if under these conditions an old and worn cable had been selected and used by whomsoever was charged with the duty of erecting the derrick, his negligence in making the selection would be that of a coservant and not of the master. Or if, under like conditions, one of the new cables had broken, no liability would have attached to the master."

The language quoted is particularly applicable to the facts of the case at bar. New ropes, perfect, purchased from a reliable dealer as first class and for first class prices were furnished by the defendant in this case in abundance. All that was necessary was for the foreman to go to the storeroom and get such as he might need in the progress of the work. If the end of the rope which broke was in such condition that the foreman who selected it and took it from the storeroom ought to have discovered that it was rotten or defec-

tive, and he was negligent in not doing so, it was the negligence of a coemployee for which the master is not liable. It was not the duty of the defendant in this case to watch the ropes upon the several derricks; see that they were at all times in proper condition; determine when they should be changed and new ones supplied. It had the right to delegate that duty to a competent employee, and for the failure to perform that duty the master is not liable. (*Oregan* v. *Marston,* 126 N. Y. 568.) The most that can be said, interpreting the evidence most favorably to the plaintiff, is that the very end of the rope in question, that part which was spliced into the ring at the end of the chain, was defective. The rest of the rope, as appears by the uncontradicted evidence, was sound and all right and was used until worn out. It would be extending the liability of a master further than has yet been done to hold that under such circumstances he is liable for an injury to an employee because he failed to discover that the very end of a sixty-foot rope, where it was spliced as in this case, was defective and in such condition as to cause it to break.

The judgment and order appealed from should be reversed, and new trial granted, with costs to the appellant to abide event.

ADAMS, P. J., and WILLIAMS, J., concurred; dissenting opinion by SPRING, J., in which HISCOCK, J., concurred.

SPRING, J. (dissenting):

The plaintiff, a hatch tender employed in unloading iron ore at the dock of the defendant, was injured by the breaking of a rope used in hoisting a bucket filled with ore. The rope was a new one used for the first time the night of the accident, but was rotten at the place where it parted. The ropes were furnished by the defendant and were delivered over to the men by Crotty, its foreman. To him was intrusted the duty of inspecting the ropes. They were purchased from a reliable firm, including the one which broke. They were supplied to Crotty either in a coil to cut up into five or six ropes of the requisite length or were already cut for him. It does not appear how many he had on hand when he procured the one for the use of the plaintiff, nor does it appear whether they were sound or defective.

The accident happened in the night. The deck of the boat on

which the plaintiff was working was dimly lighted and there was no opportunity for him to inspect the rope. His conduct, whether blameless or otherwise, was submitted to the jury and the evidence is ample to free him from want of care.

The principles underlying this case it seems to me are elementary. The master is bound to furnish " good and suitable appliances " for his workmen. (*Byrne* v. *Eastmans Co. of N. Y.*, 163 N. Y. 461, 465; *Cone* v. *D., L. & W. R. R. Co.*, 81 id. 206.) The care required to be bestowed upon the appliances furnished to his men implies a proper inspection and examination of them by the master. (*Byrne* v. *Eastmans Co. of N. Y., supra.*)

This duty may not be delegated by the master so as to exempt him from liability from its careless performance resulting in the injury. (*Benzing* v. *Steinway & Sons*, 101 N. Y. 547; *Eastland* v. *Clarke*, 165 id. 420, 429.) The subordinate who performs this work for the master is the *alter ego* of the latter, not a fellow-workman with the other employees. (*Bailey* v. *R., W. & O. R. R. Co.*, 139 N. Y. 302; *Eaton* v. *N. Y. C. & H. R. R. R. Co.*, 163 id. 391, 395.) The assumption of risks incident to his employment by an employee only arises " after the master has discharged his duty of reasonable care to prevent them, or such as are quite as open and obvious to the servant as the master." (*Eastland* v. *Clarke*, 165 N. Y. 420, 427, and cases cited.)

There is a class of cases, where the appliance becomes defective by use, and this fact is well known to the workmen, and an inspection will disclose the wearing away to him as well as to any one however skilled, and when the appliances are accessible to him to supply any which become defective, that the master may be relieved from liability for injuries to the employee caused by such an appliance. That rule, however, does not apply to an appliance defective when furnished, and which was not obvious to the workman. The cases cited in the prevailing opinion do not go to that extent. In *Yaw* v. *Whitmore* (46 App. Div. 422), cited in the prevailing opinion, a derrick used in hoisting stone in making repairs on the Erie canal, and which remained stationary for five months, was held to be a permanent structure in contradistinction from a portable one. In the present case the appliance was a derrick connected with the dock in unloading iron ore and remained fixed year by year. In

the *Yaw* case this court reasserted the principle that the duty is that of the master to furnish adequate machinery and appliances for his men to carry on the work, and further that an exception to this general rule exists where suitable appliances are furnished but become " temporarily impaired by reason of constant use when the impairment is of such character as to be easily and readily remedied by the servant, a part of whose duty it is to attend to such matters." Here the rope furnished by the defendant was defective when turned over to the plaintiff. It did not wear out by use, but the master was delinquent in providing an unsafe rope. Its rotten condition was not observable by the plaintiff, for he was carrying on the work at night with only a lantern for a light, and the defendant employed a foreman to supply the ropes to the men and that official was supposed to inspect them before handing them out, and a reasonable inspection by him would have discovered this defect. It was not the plaintiff's duty to inspect new ropes, but that was Crotty's work. The plaintiff could not make an inspection in the dark of a rope eighty feet long.

In the scaffolding cases, which are numerous, the employee usually was engaged with other workmen in erecting a scaffold and with an opportunity to inspect the lumber used and an abundance of the proper material was at hand. They have no application to a case like the one under consideration.

In *Cregan* v. *Marston* (126 N. Y. 568) the rope, originally sound, became frayed and unsafe by use and its condition was visible to the workmen. "The rope was swinging before their eyes, and would disclose its approaching weakness on the surface before it became rotten or pulpy within, and they were able to know how long it had been used and so whether prudence required it to be changed" (p. 571). The court comments on *Daley* v. *Boston & Albany R. R. Co.* (147 Mass. 101), saying, " and that case draws clearly the distinctions between an original defect in the rope provided and one occurring from its use." None of these cases, as I understand them, trench upon the general rule that the duty is primarily upon the master to furnish reasonably safe appliances for his workmen. This duty cannot be delegated, and while it is competent proof tending to show a compliance with this obligation that he

purchased of a reliable firm the appliance claimed to be defective, yet that fact is only a circumstance and is not by any means conclusive. If he were to be relieved in that way the duties of inspection would be destroyed and the underlying principle that the master's obligation is insistently with him in the first instance would be rendered nugatory and no liability would attach however defective the materials might be.

The identical rope which caused the injury was furnished at the supply store of the defendant, and whether Crotty made a proper inspection or not was properly submitted to the jury, although his examination was only cursory.

The judgment should be affirmed, with costs to the respondent.

HISCOCK, J., concurred.

Judgment and order reversed and new trial ordered, with costs to the appellant to abide event, upon questions of law only, the facts having been examined and no error found therein.