### CONYES v. OCEANIC AMUSEMENT CO.

(Supreme Court, Appellate Division, Second Department. May 7, 1909.)

Appeal from Trial Term, Kings County.
Personal injury action by Alfred W. Conyes against the Oceanic Amusement Company. From a judgment for plaintiff, and an order denying a new trial, defendant appeals. Affirmed as to the first cause of action, and reversed and new trial granted as to the second.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, RICH, and MILLER, JJ.

C. Walter Randall, for appellant.
Frederick N. Van Zandt, for respondent.

PER CURIAM. Judgment and order affirmed, without costs, as to the first cause of action. As to the second cause of action, judgment and order reversed, and new trial granted; costs to abide the event.

WOODWARD, J. (dissenting in part). The plaintiff has secured a judgment for $9,108.85 upon two causes of action for personal injuries. The action is brought at common law; no claim being made under the employer's liability act (Laws 1902, p. 1748, c. 600). In the first cause of action the jury awarded a verdict for $7,000. The facts alleged in this cause were in substance that the plaintiff was employed by the defendant to drive a team drawing a fire engine to be used as a part of the spectacular performance of "Fighting the Flames," at Dreamland, Coney Island; that he was subsequently, and in connection with this employment, engaged to do an act of rescue from a burning building, in which he drops down on a rope from a fifth-story window, takes a woman from a fourth-story window, and carries her to the ground; that while thus engaged, on the 8th day of June, 1904, the rope, which was supplied for his use, broke, and precipitated him, with his burden, to the ground below, producing serious bodily injuries. The negligence alleged in this instance is the failure of the defendant to provide "plaintiff with safe and proper means to perform said rescuing act, and in not providing safe and necessary apparatus, means, and appliances for plaintiff's safety while performing said rescuing act."

The plaintiff testified that at the time of his employment he was told by those who employed him, and who are described as the "chief" and the man who paid them off, that he was to be supplied with the best Manila hemp rope, such as is used by the New York fire department, and that the rope which was actually supplied and in use at the time of this accident was not hemp rope at all, but that it was an inferior grade; and it is urged by the respondent that, notwithstanding the general rule where a master has furnished proper rope to perform a particular service, the fact that the defendant had agreed upon a particular kind of rope estopped it from now claiming the benefit of the rule. It appears from the plaintiff's testimony, however, that he had used this same rope several times during the day; that he knew good rope when he saw it, and there is not the slightest suggestion that he ever made any complaint of the quality of the rope provided, though he says that the rope was inspected at short intervals, and that he was getting a new rope every four or five days.

Assuming, therefore, that the defendant agreed to furnish the best grade of Manila rope (and it appears from the plaintiff's testimony that the first rope furnished was such rope), the plaintiff knew good rope when he saw it, and he must, therefore, have been able to tell whether a rope was a poor one or not, and, having permitted the defendant to change the quality of rope without calling attention to the defect, he must be deemed to have waived this particular condition. It appears from one of his own witnesses that after the accident a second piece of rope, cut from the same rope which had broken, was put up, and that this rope was a safe rope, as the witness himself had made use of it in sliding down the same. The rope had stood the test of various performances that same day, and the plaintiff does not appear to have ever thought that there was any lack of care on the part of the defendant in furnishing this rope until after the accident, while the test of reasonable care is what would have been the judgment of reasonable men before the accident occurred. It appeared from the evidence that this rope had been tested; that a test, which the plaintiff agrees was an adequate test, had been applied; that the rope, in a long piece, had been thus tested, and that it had then been cut into lengths proper for the use to which it was to be put, and the remainder placed in the storehouse for further needs. There is no dispute as to this testimony. It is furnished by the plaintiff's own witnesses, and we think the most that can be said of the case made by the plaintiff is that he has shown that a rope, standing an adequate test in the first instance, broke and resulted in his injury.

The defendant had provided plenty of rope which was proper for the work to be performed, and, if the particular piece of rope which he was called upon to use on the particular day of the accident had become worn or burned out, it was the duty of the plaintiff, or of his fellow servants, to make use of the new rope which was ready and available. It is not the duty of the master, having supplied proper materials and appliances and reasonably competent fellow servants, to personally see to it that these fellow-servants make use of the materials. Damjanovic v. Herring–Hall–Marvin Safe Co., 119 App. Div. 12, 14, 15, 103 N. Y. Supp. 932. The duty of the master is performed when he has supplied adequate and proper materials and competent fellow servants, and he is not bound to watch over the use of a rope, or other simple appliance, and determine just when there shall be a change. This is one of the details of the work which may be properly delegated to a servant, and the master is not liable for the servant's negligence or error in judgment. Cregan v. Marston 126 N. Y. 568, 27 N. E. 952, 22 Am. St. Rep. 854; Ivers v. Minnesota Dock Co., 84 App. Div. 27, 82 N. Y. Supp. 193.

We are of the opinion, therefore, that the court erred in refusing to dismiss the complaint at the close of the evidence, in so far as the first cause of action is concerned.

In the case of Davenport v. Oceanic Amusement Company (decided at this term of court) 116 N. Y. Supp. 609, which was for the damages growing out of the personal injuries of the plaintiff in that action in the same accident for which the plaintiff in this action claims damages, there is no substantial difference in the testimony, and the employer's liability act is not involved in any way in the case now under consideration. In that case we have held that the plaintiff accepted the obvious risks of the employment and was not entitled to

recover. Having held this in reference to a woman, who, in the nature of the case, would not be as well prepared to judge of a situation of this character as the plaintiff in this action, who was a professional fire fighter, having appeared in exhibitions and been employed in the fire department, there is no ground for holding a different rule in his case. The discussion in the case cited above covers all of the essential facts in the case now before us, except that in this case the plaintiff is Conyes, who was engaged at the time of the accident in carrying Rose Davenport, while in the other case the plaintiff was the one being carried, and it does not appear to be necessary to incumber the reports with more of detail.

The judgment and order appealed from should be reversed.