### YAW v. WHITMORE et al.

(Supreme Court, Appellate Division, Fourth Department. January 18, 1899.)

INJURY TO EMPLOYE—NEGLIGENCE OF FELLOW SERVANT.

Where a cable used as a line for support of a derrick, which gave way, resulting in injury to an employé working near it, was reasonably proper for the work, the master is not liable because of the manner in which it was used by the men in setting up the derrick.

Appeal from trial term, Monroe county.

Action by William Yaw against Valentine F. Whitmore and others. Plaintiff had a verdict for $6,000, and from an order denying a motion for new trial on the minutes defendants appeal. Reversed.

Plaintiff's complaint alleges that the defendants, Whitmore, Rauber & Vicinus, were contractors and builders, and that on the 22d of December, 1896, they were engaged as such contractors in enlarging the Erie Canal and its banks at or near the village of Cartersville, in the county of Monroe, and that on that day this plaintiff was employed by the defendants as a common laborer; and it is averred that "without any fault or negligence on his part, and solely by reason of the negligence of the defendants, as hereinafter set forth, the large stationary derrick used by the defendants for lifting and shifting heavy timbers, stones, and loads of earth and other materials, in said work, suddenly collapsed, and a portion thereof fell upon this plaintiff." The plaintiff further alleges "that said large stationary derrick was an improper and inadequate instrument for performing the work for which it was utilized by said defendants upon the said 22d day of December, 1896; that the same had been defectively and negligently constructed, erected, and maintained by the said defendants, and that the materials of which the same was constructed were insufficient and improper for the construction of such an instrument as said derrick; that the defendants had carelessly and negligently failed and neglected to maintain said derrick in a safe condition, and that the said defendants had neglected and wrongfully suffered and permitted the said derrick to become defective; that by reason thereof said derrick collapsed, thereby causing the injuries to this plaintiff." It is al-

leged that the defendants knew of the inadequacy of the instrument, and of its improper and inadequate construction, and of its defects. The general allegations quoted from the complaint were repeated in a bill of particulars furnished by the plaintiff; and in the bill of particulars it was stated that the derrick, when constructed upon the work at Pittsford, as set forth in the complaint, was "old, weak, defective, rotten, worn, and spliced, many of the strands thereof having been already broken." It is also averred that the "ropes, stays, or cables used by the plaintiff in fixing the mast and other parts of said derrick in position at the time when said derrick was constructed * * * were insufficient." And it is also stated that the "entire derrick so constructed, as alleged in the complaint, was a defective instrument or appliance, in that it was inadequate in size, and the parts thereof were not in proper proportion to carry the heavy weights and loads which said derrick was constructed to lift and carry, in that sufficient ropes, stays, or cables, both as to number and size, were not furnished by the defendants, and actually put into and made a part of the construction of said derrick, and in that the boom of said derrick was too heavy and too long, as compared with other portions thereof."

Argued before HARDIN, P. J., and FOLLETT, ADAMS, WARD, and McLENNAN, JJ

Joseph W. Taylor, for appellants.
George H. Harris, for respondent.

HARDIN, P. J. According to the evidence, the defendants' principal office was at Rochester, some nine miles from the place where they were engaged in carrying on the contract for the enlargement of the canal. They directed their men to select suitable materials from their depot in Rochester, and to remove them to the works, and to erect a derrick for the purpose of carrying forward the work of enlargement of the canal. The defendants had a foreman, and he had charge of some men in the erection of the derrick. The mast of the derrick was anchored at its base by means of an iron pin set into a socket, and it was held in an upright position by guy lines or wire ropes or cables running from its top, in different directions, to different anchorages. One of the guy lines was anchored to a tree, and was spliced a few feet from the tree,—some of the witnesses say 5 feet from the tree, some say 15 feet from the tree,—and the ends were fastened together by means of clamps. When the line which extended eastwardly, and was fastened to a tree, broke, the derrick fell, and as it fell it struck and injured the plaintiff. At the time of the fall the derrick had been in position and operation some three or four weeks, having been erected by the defendants' employés under the direction of their foreman, Sampson. Of the cables carried from the city of Rochester out to the works, some of them were new, and some of them had been used before, and several more cables were carried out than were actually used in the erection of the derrick. Sampson determined the number of guys to be used, and selected such as he regarded necessary from those that were carried to the works, and erected the principal derrick, and near to it a smaller one. The lines that were used had been in use on prior occasions, and were somewhat frayed and worn by use. Plaintiff's witnesses say there were four guy lines, and the defendants' witnesses seem to indicate there were five. It is stated by one witness that there was

about 365 feet of new cable there at the time, and that it was reeled onto the hoisting drum attached to the derrick to avoid cutting it before it was needed. Only a portion of it was needed for hoisting purposes, and the other was available for other purposes. The derrick was erected in the prism of the canal, and its location was to be changed from time to time as might become necessary in the progress of the work.

It is contended in behalf of the appellants that the master furnished materials sufficient and of adequate character to have enabled the employés of the defendants to have constructed a reasonably safe and suitable derrick to carry out the work that was in process, and that the construction of such a derrick, its erection, its supports, and placing it in situation to accomplish the objects for which it was erected, were all parts of the detail of the work which was to be performed by the employés of the defendants. In the very careful and intelligent charge delivered by the trial judge to the jury, he said in the body thereof, viz.:

"The master is only required to use reasonable care, skill, and judgment in furnishing machinery and implements properly constructed, and ordinarily skillful and trustworthy agents to perform the labor. I charge you that it was the duty of the defendants to see that the derrick was properly constructed, and that it had suitable and safe appliances; in other words, the duty devolved upon the defendants to exercise reasonable care in that respect. It was their duty, I say, to properly construct the derrick, and to employ ordinarily skillful and trustworthy agents or workmen; and if the defendants did not use such care, skill, and judgment, and an injury to the plaintiff resulted therefrom, the defendants are liable for such injury, providing the plaintiff was free from contributory negligence. * * * . You will determine from the evidence whether that cable was a defective cable. That seems to be the pivotal point in this case, and in fact I might say it is the only point upon which the plaintiff claims negligence on the part of the defendants."

The manner of construction of the derrick, and detail of the execution of the work, of its erection, and the supports applied thereto by the servants of the defendants, were fully detailed, and, to a large extent, commented upon, by the trial judge in the course of his charge. After the body of the charge had been delivered, the learned counsel for the appellants made the following request to the court to charge:

"If the cable was reasonably proper for the work, the defendants are not liable because of the manner in which it was used by the men in setting up the derrick."

That request was declined, and an exception was taken. The court added, however:

"I think it devolved upon the defendants to see to it that the derrick was properly constructed, and suitable appliances were furnished."

An exception was taken.

The counsel for the defendant also requested the court to charge:

"If the defendant furnished materials for putting up the derrick which contained enough good material to set the derrick up properly, they are not liable if there was some material in the hands of the men which was not proper, and which they used."

In response to that request the court observed:

"I leave the question to you, gentlemen,—as to whether they were negligent in that respect. It was the duty of the masters to see that proper materials were furnished, and the duties which devolved upon the masters could not be delegated to the servants, so as to relieve them from responsibility."

An exception was taken to the charge.

We think the defendants were entitled to have the jury charged that, if the cable was reasonably proper for the work, "the defendants are not liable because of the manner in which it was used by the men in setting up the derrick." The learned trial judge had not specifically instructed the jury upon the pivotal point in the request. The jury ought to have been instructed that if the cable was reasonably proper for the work, and that if the jury found that it broke because "of the manner in which it was used by the men in setting up the derrick," then the defendants were not liable. The manner in which the men used the cable that was furnished in setting up the derrick was a part of the detail of the labor which they were engaged in performing. In Crispin v. Babbitt, 81 N. Y. 516, it was held that:

"If the act is one pertaining to the duty the master owes to his servants, he is responsible to them for the manner of its performance; but, if the act is one pertaining only to the duty of an operative, the employé performing it, whatever his rank or title, is a mere servant, and the master is not liable to a fellow servant for its improper performance."

The doctrine of that case was reasserted in Cullen v. Norton, 126 N. Y. 6, 26 N. E. 907. Near the close of the opinion in that case the court said:

"The master furnished the mine as a place for labor, and it was solely on account of the manner in which the foreman, a fellow servant, performed the work, or directed it, that the accident happened, and happened in the course of the performance of the very kind and character of work which the plaintiff's intestate took the risk of by accepting employment."

The same doctrine was again adverted to and stated in Hankins v. Railroad Co., 142 N. Y. 420, 37 N. E. 466.

In Kimmer v. Weber, 151 N. Y. 422, 45 N. E. 861, it was said:

"The master is not responsible for the negligent performance of some detail of the work intrusted to the servant, whatever may have been the grade of the servant who executes such detail."

The exceptions to which we have referred seem to require a new trial.

Order reversed, verdict set aside, and a new trial ordered, with costs to the appellants to abide the event. All concur, except WARD, J., not voting.