O'CONNOR v. HALL.

(Supreme Court, Appellate Division, First Department. June 8, 1900.)

MASTER AND SERVANT — PROPER APPLIANCES — FOREMAN'S NEGLIGENT USE — SERVANT'S INJURIES—MASTER'S LIABILITY.

Where defendant, a master employing plaintiff's intestate and others to load a vessel, furnished a proper clamp and ropes with which to safely lash it to the deck beam, and the clamp was not lashed, but insecurely attached by one bolt, by direction of the master's foreman, and in consequence of this insecure fastening a barrel in process of loading slipped and fatally injured plaintiff's intestate, defendant is not liable for his foreman's negligence; the foreman in that particular acting as a fellow workman of plaintiff's intestate, and not as a representative of defendant.

Appeal from trial term, New York county.

Action by Margaret O'Connor, as administratrix of the estate of Dominick O'Connor, deceased, against Benjamin J. Hall. From a judgment in favor of plaintiff, and an order denying a new trial, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and PATTERSON, INGRAHAM, and HATCH, JJ.

Charles C. Nadal, for appellant.
Gilbert D. Lamb, for respondent.

INGRAHAM, J. The accident which resulted in the death of the plaintiff's intestate, and for which it is sought to hold the defendant liable, was occasioned by the slipping of a clamp used in loading a United States war vessel. The defendant, a stevedore and contractor, was employed by the United States naval authorities to load supplies upon the steamer Buffalo, about to sail for Manilla. The executive officer of the ship told the defendant that he wanted about 30 men, and directed the defendant to bring them to the ship; that the first officer would take charge of handling them there; and that the tools, ropes, blocks, and tackles of all kinds would be furnished by the vessel. The defendant was paid so much per hour for each man and two foremen. The defendant employed the men, who, with the two foremen, went to the ship and commenced to work. The hatches upon the main deck were securely fastened for the voyage, and the officers would not allow them to be removed, so that the men could not use the derricks or booms fastened to the masts for the purpose of loading and unloading the vessel. Upon the morning of the accident, which was the day before the ship was to sail, the men employed by the defendant were engaged in placing in the lower hold certain stores and other articles from the gun deck, which is below the main deck. In the performance of this work a number of barrels of rivets had to be lowered from the gun deck to the hold,

and to do this it became necessary to rig a tackle, and to fasten it to the beams of the deck above the hatch through which the articles had to be lowered. The defendant's foreman McLean directed one of the men employed by the defendant to procure a clamp from the vessel. Such a clamp was procured, and McLean ordered the men to attach it to the deck beam above, upon which the men were working. This clamp contained but one bolt, and some of the workmen employed by the defendant testified that one bolt was not sufficient to fasten the clamp in such a way that it would not slip, and that, to make it secure, it should have been lashed with ropes. It appears that some of these clamps have two bolts, but that even such clamps were liable to slip unless they were lashed. The men fastened this clamp to the deck beam above, without attempting to lash it. Some of the witnesses called by the plaintiff testified that the men who fastened the clamp did not screw it tight enough so as to make it secure. After the clamp was thus affixed to the deck beam, McLean was asked whether the men should go ahead, and he replied to go ahead and use it. The plaintiff's intestate was down in the lower hold, receiving the articles as they were lowered down, and stowing them away. One or more barrels of rivets were safely lowered, but as another barrel was being let down the clamp slipped along the beam; and this slipping caused the barrel, in some way, to strike the plaintiff's intestate, who was at the bottom of the hold, causing the injuries from which he subsequently died. The defendant was not present at the time of the accident, and his liability depends upon whether there was negligence in the performance of a duty that he owed to his employés,—whether the accident occurred in consequence of any negligence in the performance of the master's duty.

Workmen called as witnesses for the plaintiff testified that there were ropes there by which the clamp could have been fastened, and that after the accident another clamp, with two bolts, was obtained, and was securely lashed with ropes that were there. It is not disputed but that these clamps are commonly used for moving articles from one deck to another, where it is impossible to use the derrick or boom attached to the mast of the vessel. There was no evidence to justify a finding that this clamp would not have been an entirely safe appliance to do the work required of it, had it been securely lashed, instead of being left in the condition that it was by the men who attached it to the deck beam; and it is clear that the defendant is not liable for using this particular clamp, rather than a clamp with two bolts, which some of the witnesses for the plaintiff seem to consider would have been a better appliance for this particular work. As a matter of fact, the officers of the ship selected the particular clamp that was used; and it cannot, I think, be seriously doubted but that to fasten this clamp securely to the ship was a detail of the work that the workmen were employed to do, and that, if that had been properly done, the accident would not have happened. As the defendant was not negligent in furnishing a proper appliance for the work to be done, his negligence, if it existed, must be predicated upon the failure to properly use the appliance that was furnished by the ship for this work.

The question is whether these workmen, in fastening the clamp to the beams,—and this would include McLean, the superintendent, and the other workmen employed by the defendant,—were engaged in a duty of the master. The defendant employed McLean as superintendent, and the other men as workmen under him, to load the vessel. In the course of loading, an appliance for lowering the freight to the lower hold became necessary. Proper tackle was procured, including a clamp to attach to the upper deck beam, from the ship, which was to be applied in such a way as to enable the men to do the work they were employed to do. The men were thus required, and did undertake, to fasten this appliance to the deck of the vessel, but did it in such a way that it slipped, and the injury resulted. It was in the use of the appliance furnished for the purpose by the vessel, and which, if it had been properly used, would have been safe, that there was negligence; and for the negligent use of this appliance, under the rule which is now well settled in this state, it would seem that the defendant was not liable. McLean undoubtedly represented the defendant in the performance of any duty that the defendant owed to these men that he employed. In the performance of the duty that devolved upon the men themselves in the course of their employment, McLean, notwithstanding his position, was a fellow workman with each of the others engaged in the same work. In so far as these men were required to use this appliance, McLean in the use of it was a fellow workman with each of the other workmen; but, in so far as he was engaged in any work or in the performance of any duty that devolved upon the defendant, the defendant would be liable for his negligence. This distinction is illustrated in one or two late cases in the court of appeals and in this court. The duty of the master is stated in the case of McGovern v. Railroad Co., 123 N. Y. 280, 25 N. E. 374, to be as follows:

"In other words, it is the duty of the master, having control of the time, places, and conditions under which the servant is required to labor, to guard him against probable danger in all cases in which that may be done by the exercise of reasonable caution. The master is required to furnish the servant adequate and suitable tools and implements for his use, a safe and proper place in which to prosecute his work, and, when they are needed, the employment of skillful and competent workmen to direct his labor and the performance of his duties."

And in that case the court held that the jury might have found that the master was liable for neglecting his duty to make an inspection before ordering his servants to enter a place which was obviously dangerous. In this case reasonable and proper appliances were furnished. The place in which the men were at work was as safe as it could be made, and there is no question as to the skill of those who were employed to direct their labor.

In the case of Kimmer v. Weber, 151 N. Y. 422, 45 N. E. 860, the plaintiff's intestate was killed by the falling of a scaffold used by the defendant's workmen in the performance of their duties. There the defendant sent men to a building to do certain work; instructing them to make a scaffold for themselves with three wooden horses furnished by the defendants, by placing planks on two of them, and using the third to extend the scaffold as they passed around the

room. The workmen, of whom the deceased was one, constructed the scaffold from materials furnished by the defendants. During the continuance of the work the scaffold fell, resulting in the injury and death of the plaintiff's intestate. The court held that the defendant was not liable, and stated the rule to be:

"The master is not responsible for the negligent performance of some detail of the work intrusted to the servant, whatever may have been the grade of the servant who executes such detail. If it is the work of the servant, and he volunteers to perform it, and the master is not at fault in furnishing proper materials, there is no breach of duty on the part of the latter."

In Richards v. Hayes, 17 App. Div. 422, 45 N. Y. Supp. 234, we recognized the extent of the same rule, but held the master liable because the materials he furnished for the construction of the scaffold were unsuitable and insufficient for the purpose, and that, as it was his duty to supply proper materials, for his failure to do so he was liable.

In McCampbell v. Steamship Co., 144 N. Y. 552, 39 N. E. 638, the plaintiff, a longshoreman, was engaged in unloading a steamship, using a skid, one end of which was upon the dock and the other upon the vessel; and the accident was caused by what is known as a "mouthpiece" not being securely attached to the skid. It was there held that the defendant was not liable, the court saying:

"The most that can be claimed by the plaintiff is that the mouthpiece was improperly tied to the skid. * * * They were tied together by the employés of the defendant, who were shown to be experienced longshoremen, and if, as claimed, this work was improperly done, it was the negligent act of the co-employés of the plaintiff."

The same principle was applied in Hogan v. Smith, 125 N. Y. 774, 26 N. E. 742.

Hudson v. Steamship Co., 110 N. Y. 625, 17 N. E. 342, was a case where an accident was caused by the falling of a skid over which the plaintiff was carrying freight. The skid fell because it was not properly secured, and it was held that the defendant was not liable, as the negligence was that of a fellow workman of the plaintiff. In Watts v. Beard, 18 App. Div. 243, 45 N. Y. Supp. 873, the foreman screwed an eyebolt into the ceiling, to be used in hoisting an iron beam. The beam fell because of the insecurity of the eyebolt, causing injury to one of the men; and it was held that the negligence was that of a fellow servant, although the foreman attached the appliance. See, also, Yaw v. Whitmore, 37 App. Div. 98, 55 N. Y. Supp. 1091; Gibbons v. Illuminating Co., 36 App. Div. 140, 55 N. Y. Supp. 378. It would seem that this case was brought within this rule. The attaching of this clamp to the deck beam was a detail of the work that those employed by the defendant were to do, and which they undertook to do. The appliance was one that was well known and commonly in use upon iron vessels of this character, and, while not usually used in loading or unloading vessels, was commonly used in passing articles from one deck to another; and all the men seem to have been familiar with its use. The clamp was fastened to the deck beams by the men themselves, and, though the superintendent directed the men to fasten it, what they did was a detail of the work they were employed to do. They did it negli-

gently, and the accident resulted. The accident was thus caused by the negligence of the men who were fellow workmen of the plaintiff's intestate, and for such negligence, applying the rule that is well settled in this state, the defendant was not liable. It follows, therefore, that the complaint should have been dismissed.

Judgment and order reversed, and new trial ordered, with costs to the appellant to abide the event. All concur.